### In re PULIS.
No. 9131.

District Court, S. D. Iowa, C. D.
April 11, 1936.

E. S. Tesdell, of Des Moines, Iowa, for bankrupt.

Don E. Neiman, of Des Moines, Iowa, in pro. per.

### DEWEY, District Judge.

The above-entitled matter came on for hearing in open court at Des Moines, Iowa, on the 27th day of March, 1936, on the petition of Don E. Neiman, trustee, to review a certain order entered by the referee in bankruptcy dated March 18, 1936, and the referee's minutes of the hearing on exemptions dated February 27, 1936, wherein the referee found and ordered that the bankrupt might select property of the value of $500 from the general assets of the estate and which were set off to him as exemptions, under the Moratorium Act of the 46th General Assembly of the state of Iowa.

It appears that the bankrupt was engaged in the grocery business, and that the $500 exemption referred to would be taken from the grocery stock owned by the bankrupt at the time his petition in bankruptcy was filed, and that his entire stock is of the value of $500. The act of the 46th General Assembly, in so far as applicable here, reads as follows: "Sec. 2. A debtor who is a resident of this state and the head of a family * * * may, in addition to the exemptions provided in section eleven thousand seven hundred sixty (11760), code, 1931, select and have set off to him livestock, farm products, farm utensils or machinery, household goods, or other property owned by him, in the aggregate value not to exceed the sum of $500.00, and hold said property exempt from general execution until March 1, 1937." Chapter 109 Laws of the 46th Gen.Assem.Iowa.

The question arises whether the phrase used in the second section of the act, as follows, "or other property owned by him, in the aggregate value not to exceed the sum of $500.00," would include property from a grocery stock.

The bankrupt claims that this phrase should be liberally construed and, as the act is an emergency act, that it is within the authority of the Legislature to enact, and that he is entitled to the exemption under these express provisions of the Legislature. The trustee on the other hand claims that the above phrase should be construed in a more narrow sense as it follows words granting express items and that it was not the intention of the Legislature to include an exemption that would apply to a grocery stock, as here claimed. He invokes a general rule of construction that the intention of the Legislature is always necessary to be determined in construing a statute, and that had the Legislature intended to give a meaning to the statute as broad as that claimed by the bankrupt, it would have been easy for the Legislature to have so expressly said and not used the phraseology that it did use in stating specific things that were to be exempt and then following them with the above phrase.

Under this situation and by reason of this uncertainty of the intention of the Legislature, it is necessary for the courts to find out if there are any rules that would apply under this situation.

A rule of general application in situations of this kind has long been recognized by the courts and applies to the interpretation of exemption statutes, as follows:

"* * * That where specific words are used followed by words of more general import, the general words are to be limited to things of the same kind as are described by the specific words, unless an intention may be found to extend their meaning; that the express mention of one thing implies the exclusion of another of the same class. * * *" 25 C.J. p. 10, § 8 (2a).

"The law controlling and guiding the court in determining a disputed interpretation of an apparently ambiguous statute is well settled. The primary object in the construction of a statute is to ascertain, if possible, and to give effect to, the intention of the legislative body that enacted the law. That intention must be deduced not from a part but from the entire law. The purpose which the enacting body sought to accomplish and the remedy which

it endeavored to apply must always be considered for the purpose of ascertaining its intention. The statute must be given a rational, sensible interpretation; and, if consonant with its terms, it must have an interpretation that will advance the purpose and effect the remedy intended. Wolsey v. Chapman, 101 U.S. 755, 769, 25 L. Ed. 915; Interstate Commerce Commission v. Baird, 194 U.S. 25, 38, 24 S.Ct. 563, 48 L.Ed. 860; James v. Milwaukee, 16 Wall. (83 U.S.) 159, 161, 21 L.Ed. 267; Business Men's Assur. Co. v. Campbell, 18 F.(2d) 223, 225 (C.C.A. 8)." Baxter v. McGee, 82 F.(2d) 695, 700 (C.C.A. 8), decided March 3, 1936.

These general rules are only for the purpose of aiding the court in trying to determine what was the real intention of the Legislature, as that intention is the cardinal rule which must be followed. While there is no dispute in the authorities as to the above rules, I find no case exactly in point and discussions of the cases are of little importance.

The nearest like statute I find is in the state of Washington, where, after providing what may be held as exempt to the head of a family, is the following: "that in case such householder should not possess or shall not desire to retain the animals above named, he may select from his property and retain other property not to exceed two hundred and fifty dollars, coin, in value." (Rem.Rev.Stat.Wash. § 563, subd. 4).

The Supreme Court of Washington in the case of Creditors' Collection Ass'n v. Bisbee, 80 Wash. 358, 141 P. 886, 887, held that money could not be claimed as exempt "other property" in lieu of the particular property named in subdivision 4. The court said: "The words 'other property' appearing in the proviso of subdivision 4 can refer only to other property of a like nature to that specifically mentioned, under a well-known rule of statutory construction. To hold that money falls within the phrase 'other property' is to do violence to the rule of ejusdem generis."

In determining the legislative intent of the Iowa statute, it is difficult to understand, if they had intended to give to the heads of all families, in addition to the exemptions provided by section 11760, property of the value of $500, why the Legislature did not say in direct words to that effect.

Did the Legislature intend to permit a bankrupt to select $500 in cash as an exemption in addition to the provisions of section 11760?

This is so foreign to any exemption that has heretofore been given by any state statute that the answer comes readily that if they had intended this deflection from the general rules of exemption that they would have said so in so many words.

It seems to me that the answer to the question presented, and which is filled with difficulties, is the rule that in endeavoring to get at the true intention of the Legislature it is necessary to go through the entire statute. Doing this we find that the act of the 46th General Assembly, above referred to, is in addition to the exemptions under the general statute and that the several specified articles which the debtor may have selected and set off to him are each additional to the items and articles which are included in the original act. It therefore seems to me that in writing the Moratorium Act the 46th General Assembly had in mind and were contemplating exemptions as provided by section 11760, and intended to enlarge exemptions of the same general class and kind as are set out in the exemption statute.

This is apparent as the Moratorium Act refers more particularly to farm products and in fact each one of the items, except household goods, does expressly refer to farm products. It cannot be said that the Legislature had in mind farmers only as the wording of the statute expressly says that they refer to any debtor who is a resident of this state and the head of a family. But on reading the Moratorium Act in connection with the exemption statute, it seems to me that the Legislature had in mind an extension in an amount of $500 to the heads of families in this state as exempt property those items which are referred to in the general exemption statute.

The suggestion that the referee in bankruptcy should retain jurisdiction of the exemptions referred to in the above emergency statute until the year 1937 is without merit. If the bankrupt is entitled to exemptions during that period, he is entitled to have them set off to him and he is given the title thereto, as the general bankruptcy statute does not include in its administration a bankrupt's exempt property. The only authority of the bank-

ruptcy court is to set off that exemption to him, but the title to exempt property is at all times in the bankrupt.

From the rules of interpretation as above given, there can be but one answer to this question, and that is that the Legislature did not intend to include in their designation of additional exemptions property other than that described in the specific words used or property of the same or similar kind or character, and that a grocery stock does not come within that designation. The finding of the referee that it was the intention of the Legislature to include in the Moratorium Act an exemption of a stock of groceries, therefore, was erroneous and the referee's order should be set aside. The clerk will therefore enter the following order:

The above-entitled matter having come on for hearing in open court at Des Moines, Iowa, on the 27th day of March, 1936, same is argued and submitted, and being advised;

It is ordered that a certain order entered by the referee in bankruptcy, with reference to exemptions made on the 18th day of March, 1936, in the above-entitled matter, is hereby set aside and annulled, and the matter remanded to the referee in bankruptcy for further proceedings not at variance with the memorandum opinion of this court this day entered.