## JAMES v. MILWAUKEE.

An act of legislature authorizing a municipal corporation to lend its credit to a railroad company specified, and to "*any other railroad company duly incorporated and organized* for the purpose of constructing railroads," leading in a direction named, "and which in the opinion of common council are entitled to such aid from the city;" authorizes the lending of the city credit to a railroad company *thereafter* duly incorporated and organized, as well as the lending of such credit to those in existence when the act was passed.

ERROR to the Circuit Court for the Eastern District of Wisconsin.

*Mr. J. W. Cary, and O. H. Waldo (counsel in another but similar case), for the plaintiff in error; Mr. E. G. Ryan, contra.*

Mr. Justice SWAYNE stated the case, and delivered the opinion of the court.

This action was brought by the plaintiffs in error to recover the amount of certain overdue interest coupons attached to twelve bonds issued by the city of Milwaukee to the Milwaukee and Superior Railroad Company, and the amount of like coupons attached to a like bond issued by the city to the Milwaukee and Beloit Railroad Company.

The pleadings upon both sides are voluminous, but a short statement of the case will be sufficient for the purposes of this opinion.

The act of the legislature of Wisconsin of the 2d of April, 1853, authorized the city of Milwaukee to lend its credit to certain specified railroad companies, upon the terms and conditions prescribed. The act of the 12th of July, 1853, declared that the provisions of the preceding act "are extended, and shall include the Milwaukee and Watertown Railroad Company, *and any other railroad company duly incorporated and organized* for the purpose of constructing railroads leading from the city of Milwaukee into the interior of the State, which, in the opinion of the common council, are entitled to aid from the city." The act of the 31st of

March, 1854, extended the original act "to the South Wisconsin Railroad Company, or to any other railroad company duly incorporated and organized for the purpose of constructing railroads" to connect with "any other railroad having its terminus in said city, which, in the opinion of the common council are entitled to aid from said city." The act of March 18th, 1856, limited the amount of bonds to be issued to an aggregate of $2,000,000.

The Milwaukee and Superior Railroad Company was incorporated by an act approved March 4th, 1856, and the Milwaukee and Beloit Railroad Company by another act approved on the same day.

On the 11th of June, 1856, the common council passed an ordinance authorizing the issue of bonds to the first named company to an amount not exceeding $100,000, and on the same day another ordinance, authorizing the issue of like bonds, not exceeding the same amount, to the latter company. Both ordinances were approved and ratified by a popular vote in the manner prescribed by the statutes.

The bonds and coupons in question in this case were thereupon executed and delivered. They purport on their face to be issued in pursuance of the act of "April 2d, 1853, and of the several acts amendatory thereto."

Upon the trial in the Circuit Court the learned judge instructed the jury that the acts referred to had no application to railroad companies not in existence when they took effect, and that "there was no authority for the city to issue these bonds, and they are void, and the plaintiffs cannot recover." The plaintiffs in error excepted.

The only question which we have found it necessary to consider is the correctness of this ruling, and that depends upon the construction to be given to the language of the act of July 12th, 1853, whereby it is declared that the provisions of the prior act "are extended and shall include" the railroad specially named, " *and any other railroad company duly incorporated and organized for the purpose of constructing railroads leading from the city of Milwaukee,*" &c. The

defendant in error insists that the power conferred was con-
fined to companies already in existence at the date of the
act, and such was the opinion of the court below.   We en-
tertain a different opinion.

In this inquiry the intention of the legislature is to be
sought for.   That, whatever it may be, constitutes the law.
If it had been intended to limit the scope of the act to pre-
existing corporations, we cannot doubt that the term *hereto-
fore*, or some equivalent phrase, would have been employed
in the proper place.   This would have made the effect of
the act what is contended for by the defendant in error.   If
the word *hereafter* had been used, that would have produced
the opposite result.   In either case the effect of the term
employed would have been exclusive.   In the former, the
act would have applied only to companies already existing,
and, in the latter, only to those of later creation.   The lan-
guage is, "any other railroad company duly incorporated
and organized."   No tense is expressed and no particular
time is indicated.   There is nothing which limits and points
its meaning any more to companies then, than to those
thereafter, organized.   It is applicable, and in all respects
alike applicable, to both, and we think both were intended
to be included.

This view of the subject derives support from the plain
reason and object not only of this act, but of the entire
series of acts upon the subject.   They are all *in pari materia*,
constitute a common context, and are to be regarded as if
embraced in the same statute.*   The presence of railroads,
and especially of their *termini*, are beneficial to cities by in-
creasing their business and promoting their growth.   Such
works animate all the sources of local prosperity.   In the
case before us, doubtless quite as much was anticipated as
could, under any circumstances, have been realized.   The
legislature intended to give the city the full benefit of this
policy.   Companies organized and those to be organized
were alike important.   The restrictions and safeguards pro-

* Smith's Com. 758.

vided are applicable to both. They are found in the required sanction of the common council, the approval of the voters, the limitation of the maximum of credit to be given to each company selected, and the limitation of the maximum of the aggregate of such credits. No reason can be imagined why one class should be embraced and the other excluded. There is no consideration, affirmative or negative, which does not apply alike to both. No discrimination is made in any of the acts, and both classes are within the language employed.

The construction practically given by the parties interested, as evinced by their conduct, is in harmony with the views we have expressed, and is not without weight.*

The common council deliberately passed the ordinances, the electors approved them, the mayor subscribed and issued the bonds, and the companies received them as valid. We do not learn that there was any doubt or dissent as to the question of legal authority until after both companies had become hopelessly bankrupt.

Our attention has been called to numerous parallelisms of language in other statutes of Wisconsin, where there is, as in this case, clearly a prospective meaning. Doubtless such analogies might be found in abundance elsewhere. But we deem it unnecessary to pursue the subject further.

JUDGMENT REVERSED, and the cause remanded with directions to proceed

IN CONFORMITY TO THIS OPINION.

---

* Meyer *v.* Muscatine, 1 Wallace, 384.