## NATIONAL GROCERY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9276.

Circuit Court of Appeals, Ninth Circuit.

April 12, 1940.

---

[1] The statute was amended August 26, 1935, 49 Stat. 867, 18 U.S.C.A. § 320.

H. B. Jones, of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Louise Foster, and Berryman Green, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The case is here on petition to review a decision of the Board of Tax Appeals.

The sole question presented is one of fact —whether the liquidation of a subsidiary of appellant occurred in 1933, as appellant contends, or in 1934 as determined by the Commissioner and as found by the Board. If the subsidiary was liquidated in the former year the gain realized therefrom is not taxable, § 141 of the Revenue Act of 1932 (47 Stat. 169, 213, 26 U.S.C.A.Int.Rev. Acts, page 532), Art. 37 of Regulations 78. If, on the other hand, the liquidation took place in 1934, the resulting gain is taxable under § 115(c) of the Revenue Act of 1934 (48 Stat. 680, 711).[1]

Appellant is a Washington corporation engaged in the wholesale grocery business. It owned the major portion of the stock of the Northern Grocery Company, a Washington corporation having its place of business at Bellingham in that state. Employees of the latter corporation held the balance—37%—of its shares. In the spring of 1933 appellant and the other shareholders of the Northern informally agreed upon a plan of consolidation. The program involved the acquisition by appellant, in exchange for its own stock, of the shares in the Northern held by the latter's employees, the subsequent surrender by appellant of all the capital stock of the Northern, and the transfer of the latter's assets to appellant. In this way the Northern Grocery Company was to be liquidated and its business thereafter carried on by appellant.

On or prior to July 1, 1933 appellant acquired the shares in the Northern not theretofore owned by it, and in December of that year the certificates representing all the stock of the Northern were placed in the stock book of the latter with a notation endorsed on each: "December 28, 1933, this stock is hereby surrendered for cancelation in liquidation, National Grocery Co." Across the face of the certificates was written: "Canceled December 29, 1933."

The minute book of the Northern Grocery Company showed that a call meeting of its stockholders was held January 2, 1934 "for the purpose of acting upon a proposal from the National Grocery Company." The minutes recite that the National has "tendered" to the Northern all the stock of the latter in exchange for its assets; and that it is the desire of the National to liquidate the Northern "as of December 30, 1933."[2] Also, that at the meeting a resolution was adopted accepting the proposal of the National "as of this date", and authorizing the Northern's officers to execute a bill of sale and other appropriate instruments transferring to the National all of the Northern's assets. The bill of sale made pursuant to the resolution is dated January 2, 1934 and was signed and acknowledged before a notary on that date. The bookkeeping entries giving effect to the transaction were not entered upon the books of the two corporations until after the meeting.

The Board was of the opinion that had there been convincing testimony of an actual taking over of the assets of the subsidiary on December 30, 1933, the liquidation might properly be considered as having occurred on that date even though the formalities were not completed until afterward. It thought, however, that there was no satisfactory evidence of a distribution until after the close of the year. It found that the Northern had in fact remained in existence as a going concern throughout 1933. Also, that it was the intention of the two corporations to effect the liquidation immediately after the beginning of the new year, but "as of" the last business day of the old. This intention was not thought the equivalent of an intent to liqui-

[1] "(c) Distributions in Liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. * * *" 26 U.S.C.A. Int.Rev.Acts, page 703.

[2] December 31, 1933 fell on a Sunday

date "on" December 30, 1933; hence that the liquidation actually occurred in 1934.

Appellant concedes that the minutes and other record evidence permit of the inferences which the Board drew, but it claims that the oral testimony established an intent to liquidate on the last business day of 1933. However, the evidence in the latter respect rested upon the recollection of interested witnesses whose testimony the Board declined to accept. It was for the Board to determine the facts; and since its findings are supported by the contemporary records its decision must be affirmed.

Affirmed.