J. C. PENNEY COMPANY, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73872. Filed March 6, 1962.

*Bernard J. Long, Esq.*, for the petitioner.
*Theodore E. Davis, Esq.*, for the respondent.

OPINION.

TRAIN, *Judge:* The Commissioner determined an overassessment of $171.17 for the taxable year ended December 31, 1953, and a deficiency of $471,029.11 for the period January 1, 1954, to November 30, 1954.

The sole question is whether the gain from the sale of certain property by J. C. Penney Building and Realty Corporation is to be recognized in view of its election to have section 392(b) of the 1954 Code apply.

All of the facts have been stipulated and are hereby found as stipulated.

The petitioner, J. C. Penney Company (hereinafter sometimes referred to as J. C. Penney), is a corporation organized and existing under the laws of the State of Delaware, with its principal offices at 330 W. 34th Street, New York City, New York.

J. C. Penney Building and Realty Corporation (hereinafter referred to as Penney Building and Realty) was organized January 13, 1925, under the laws of the State of New York. Penney Building and Realty filed a Federal income tax return for the taxable period January 1, 1954, to November 30, 1954, with the district director of internal revenue for the Lower Manhattan District of New York. From the date of its incorporation to the date of its dissolution, Penney Building and Realty was a wholly owned subsidiary of J. C. Penney.

On February 2, 1954, Penney Building and Realty entered into a contract with Sommer Bros. Construction Co., Inc. (hereinafter referred to as Sommer Bros.), for the sale of its property located at 45 W. 18th Street, New York City, New York. The contract was assigned by Sommer Bros. to Eleanor Estates, Inc., which acquired title to the property by transfer of deed from Penney Building and Realty on August 3, 1954. The gross sales price of the property was $3,304,555, and the expenses of the sale were $52,242. The adjusted cost basis of the property at the date of the sale was $1,443,680.95.

On November 24, 1954, the board of directors of J. C. Penney adopted a plan for the complete liquidation of Penney Building and Realty. This plan of complete liquidation was adopted by Penney Building and Realty on November 24, 1954, pursuant to a resolution of its board of directors. On November 30, 1954, all the assets of Penney Building and Realty were distributed in complete liquidation to the petitioner. The distribution by Penney Building and Realty of its assets was made in exchange for the complete cancellation or redemption of all of its stock and in satisfaction of all its indebtedness

to petitioner. Penney Building and Realty was dissolved on December 9, 1954.

In its Federal income tax return filed on February 10, 1955, for the taxable period January 1, 1954, to November 30, 1954, an election was made by Penney Building and Realty to have section 392(b) of the Internal Revenue Code of 1954 apply to the aforesaid sale of property consummated on August 3, 1954.

On May 9, 1958, a statutory notice of deficiency was mailed to petitioner advising it that the election made by Penney Building and Realty under section 392(b) of the Internal Revenue Code of 1954 was inapplicable to the sale of the property on August 3, 1954; that Penney Building and Realty realized a taxable gain in the amount of $1,808,632.05 on the sale; that the income tax liability of Penney Building and Realty disclosed an overassessment of $171.17 for the taxable year ended December 31, 1953, and a deficiency in income tax in the amount of $471,029.11 for the taxable period January 1, 1954, to November 30, 1954; and that the petitioner as transferee of the assets of Penney Building and Realty was liable for payment of the deficiency, plus interest. Petitioner concedes that if it is held that section 392(b) of the Internal Revenue Code of 1954 is not applicable to the sale of property on August 3, 1954, that Penney Building and Realty realized a taxable gain in the amount of $1,808,632.05 on the sale; that the deficiency in income tax of $471,029.11 determined by respondent to be due from Penney Building and Realty for the taxable period January 1, 1954, to November 30, 1954, is correct; and that the petitioner, J. C. Penney, is liable for payment of the deficiency in income tax, plus interest, as transferee of the assets of Penney Building and Realty.

The petitioner contends that there can be no question as to the nontaxability of the proceeds received by Penney Building and Realty as a result of the sale of its property. Petitioner argues that all the requirements of section 392(b)(1)[1] were satisfied; namely, the sale occurred in 1954, all the assets of the company were distributed before January 1, 1955, in complete liquidation of the corporation, and the corporation elected to have the nonrecognition provisions of section 392(b)(1) apply. Petitioner also contends that the provision of sec-

---

[1] SEC. 392.  EFFECTIVE DATE OF PART II.
   (b) SPECIAL RULE FOR CERTAIN SALES DURING 1954.—
     (1) NONRECOGNITION OF GAIN OR LOSS.—If—
       (A) all of the assets of a corporation (less assets retained to meet claims) are distributed before January 1, 1955, in complete liquidation of such corporation; and
       (B) the corporation elects (at such time and in such manner as the Secretary or his delegate may by regulations prescribe) to have this subsection apply,
     then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property during the calendar year 1954.

tion 392(b)(2)(B),[2] namely, the limitation of section 337(c)(2)(A),[3] is not applicable. Petitioner points out that the sale occurred *before* the plan of complete liquidation was adopted. Petitioner contends that the limitation of section 337(c)(2)(A) only applies if there is a liquidation to which section 332 applies, the basis of the property in the hands of the distributee is determined under section 334(b)(1), and the sale or exchange occurred *following* the adoption of the plan of complete liquidation. Petitioner contends that the language of the statute is clear and unambiguous. Petitioner also relies on *Diversified Services, Inc.* v. *United States,* 192 F. Supp. 571 (S.D. Fla. 1961), on appeal (C.A. 5).

Respondent contends that petitioner's position is inconsistent with the legislative intent implicit in sections 337 and 392. It is respondent's position that since no plan of liquidation is required by section 392(b)(1), the introductory language of section 337(c)(2)(A) ("In the case of a sale or exchange following the adoption of a plan of complete liquidation") is necessarily surplusage and should be disregarded where the limitation is considered in connection with an election under section 392(b).

We agree with respondent's determination that the gain from the sale in question should be recognized. From the legislative history of section 337 and section 392 and the interrelation of those sections with sections 332, 333, 334, and 341, it is clear that the interpretation contended for by petitioner is contrary to the intent of Congress.

Petitioner's contention that section 392 is clear and unambiguous is evidently aimed at preventing the Court from looking to the legislative history of that section and those related to it. Petitioner's argument is without merit. Section 392(b)(2) provides that the limitations of 337(c) are applicable to section 392(b)(1). Since a plan

---

[2] SEC. 392. EFFECTIVE DATE OF PART II.
  (b) SPECIAL RULE FOR CERTAIN SALES DURING 1954.—

    \*        \*        \*        \*        \*        \*        \*

    (2) CERTAIN PROVISIONS OF SECTION 337 MADE APPLICABLE.—For purposes of paragraph (1)—

    \*        \*        \*        \*        \*        \*        \*

    (B) the limitations of section 337(c) shall apply.
For purposes of section 453(d)(4)(B) (relating to disposition of installment obligations), nonrecognition of gain or loss under paragraph (1) of this subsection shall be treated as nonrecognition of gain or loss under section 337.

[3] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.
  (c) LIMITATIONS.—

    \*        \*        \*        \*        \*        \*        \*

    (2) LIQUIDATIONS TO WHICH SECTION 332 APPLIES.—In the case of a sale or exchange *following* the adoption of a plan of complete liquidation, if section 332 applies with respect to such liquidation, then—
      (A) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b)(1), this section shall not apply; \* \* \*
[Emphasis supplied.]

of complete liquidation is not required in order to come within the ambit of section 392(b)(1) but section 337(c)(2)(A) speaks in terms of the existence of such a plan, the ambiguity of the sections when considered together, becomes apparent. It is well settled that resort may be had to legislative history where a statute is ambiguous. Furthermore, it is now established beyond successful challenge that a court may seek out any reliable evidence as to legislative purpose regardless of whether the statutory language appears to be clear. See *Max Carasso*, 34 T.C. 1139, 1142 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961); *United States* v. *Amer. Trucking Ass'ns*, 310 U.S. 534, 543–544 (1940).

In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress.[4] There is no invariable rule for the discovery of that intention. We may look to the reason for the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail.[5]

Since section 392 and section 337 must be construed together and, as will be shown below, section 392(b) was based on the provisions of section 337, we must start with an analysis of the latter section.

Prior to the 1954 Code, it was necessary to determine whether a corporation in the process of complete liquidation made a sale of assets or whether the shareholders receiving the assets made the sale. This determination was important because a sale by the shareholders subsequent to a distribution of property in complete liquidation of a corporation resulted in a single tax—at the shareholder level.[6] How-

---

[4] Story, *J.*, in *Minor* v. *Mechanics' Bank*, 1 Pet. 44, 64 (1828):
But no general rule can be laid down upon this subject, further than that that exposition ought to be adopted in this, as in other cases, which carries into effect the true intent and object of the legislature in the enactment. * * *
*Pennington* v. *Coxe*, 2 Cranch 33, 59 (1804); *James* v. *Milwaukee*, 16 Wall. 159, 161 (1872); *Atkins* v. *The Disintegrating Company*, 18 Wall. 272, 301 (1873); *White* v. *United States*, 191 U.S. 545, 551 (1903); *Ozawa* v. *United States*, 260 U.S. 178, 194 (1922); *United States* v. *Stone & Downer Co.*, 274 U.S. 225, 239 (1927); *Gulf States Steele Co.* v. *United States*, 287 U.S. 32, 45 (1932); *Royal Ind. Co.* v. *Amer. Bond Co.*, 289 U.S. 165, 169 (1933); *Lincoln* v. *Rickets*, 297 U.S. 373, 376 (1936); *Foster* v. *United States*, 303 U.S. 118, 120 (1938); *United States* v. *Amer. Trucking Ass'ns*, 310 U.S. 534, 542.

[5] *Ozawa* v. *United States, supra* at 194; *Holy Trinity Church* v. *United States*, 143 U.S. 457 (1892); *Heydenfeldt* v. *Daney Gold, etc. Co.*, 93 U.S. 634, 638 (1876).

[6] *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950). The corporation generated and distributed electric power. In 1936 a cooperative began to distribute power generated by the TVA, in the same area served by the corporation. It soon became obvious that the corporation could not compete with the TVA power which it was unable to obtain, and offered to sell the cooperative all its stock. The cooperative refused but countered with an offer to buy the corporation's equipment. The corporation rejected the offer because it would have been compelled to pay a heavy capital gain tax. The shareholders, desiring to save the corporate capital gains tax, offered to acquire the corporation's equipment and then sell it to the cooperative. The cooperative accepted. The corporation then transferred most of the assets to the shareholders, sold the re-

ever, where the shareholders did not in fact effect the sale, a tax was imposed at both the corporate and shareholder levels.[7] Accordingly, under prior law, the tax consequences arising from sales made in the course of a corporate liquidation depended primarily upon the formal manner in which the transactions were arranged. The possibility that double taxation could occur in such cases created a trap for the unwary.[8] Section 337 of the 1954 Code was intended to provide a definitive rule which would eliminate these uncertainties.[9]

Had section 337(a)[10] been applicable to every situation falling within its terms, it is apparent that it would have nullified certain provisions of the Code (sec. 341) or, if used in conjunction with other sections (sec. 332 or sec. 333), it could have led to complete avoidance of all income tax. By limiting the applicability of section 337(a), through section 337(c), Congress expressed an intent to avoid these results. It is equally clear that section 337(c) was intended to limit the applicability of section 337(a) to situations which would achieve its avowed purpose.[11] From the following discussion of the limitations of section 337(c), this congressional intent becomes evident.

Section 337(c)(1)(A) provides that section 337 is not applicable to a sale or exchange by a collapsible corporation (as defined in section 341(b)). Prior to 1950, collapsible corporations were availed of in

---

mainder and completely liquidated. The Supreme Court, in distinguishing *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945), held that there was no corporate tax due because the sale had in fact been made by the shareholders. The Court noted that while the distinction between sales by a corporation as compared with distribution in kind followed by shareholder sales may be particularly shadowy and artificial when the corporation is closely held, Congress chose to recognize such a distinction for tax purposes.

[7] *Commissioner* v. *Court Holding Co., supra.* A corporation had negotiated for the sale of its assets and had reached an oral agreement of sale. When the tax consequences of the corporate sale were belatedly recognized, the corporation purported to call off the sale. Subsequently, the assets of the corporation were distributed to the shareholders and the corporation was liquidated. The shareholders promptly conveyed these properties to the same persons who had negotiated with the corporation. The terms of purchase were substantially those of the previous oral agreement. The Supreme Court held that the sale was made by the corporation rather than the shareholders and hence the sale by one person could not be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title.

[8] S. Rept. No. 1622, 83d Cong., 2d Sess., p. 49 (1954) ; H. Rept. No. 1337, 83d Cong., 2d Sess., p. A106 (1954).

[9] S. Rept. No. 1622, 83d Cong., 2d Sess., p. 258 (1954) ; H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 39, A106 (1954).

[10] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[11] To eliminate the uncertain tax consequences connected with sales made in the course of a corporate liquidation.

an attempt to convert ordinary income into long-term capital gain. By section 117(m) of the 1939 Code (the predecessor of section 341 of the 1954 Code), Congress sought to obviate this result.[12] If section 337 were applicable to collapsible corporations, the provisions of section 341 would be nullified. A corporation could sell its assets, avoiding the recognition of gain under section 337, while the shareholders would escape section 341(a) because the corporation would have realized (though without recognizing) its gain, and hence would not be a collapsible corporation under section 341(b).

Section 337(c)(1)(B) provides that section 337 does not apply to a sale or exchange by a liquidating corporation if section 333 is availed of. The reason for this limitation is not entirely clear, but presumably this was done so that tax will not be avoided at both the corporate and shareholder levels by use of section 337 and section 333 in combination.[13]

Section 337(c)(2)(A), the limitation which is in controversy here, provides that "In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 [14] applies with respect to such liquidation, then * * * if the basis of the property of

---

[12] H. Rept. No. 2319, 81st Cong., 2d Sess. (1950). S. Rept. No. 2375, 81st Cong., 2d Sess. (1950).

[13] The corporation, if section 337 were applicable, could sell its assets without recognizing gain, invest the proceeds in other property, and distribute the newly acquired property under section 333. Unless the transaction was regarded as, in substance, a distribution of money, the shareholders would avoid a tax at the shareholder level except to the extent that the sale increased the corporation's earnings and profits.

[14] SEC. 332.  COMPLETE LIQUIDATIONS OF SUBSIDIARIES.

(a) GENERAL RULE.—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.

(b) LIQUIDATIONS TO WHICH SECTION APPLIES.—For purposes of subsection (a), a distribution shall be considered to be in complete liquidation only if—

(1) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends) ; and either

(2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year ; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution ; or

(3) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within 3 years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under paragraph (1) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation.

the * * * distributee is determined under section 334(b)(1),[15] this section [337] shall not apply * * *." Section 337(c)(2)(B),[16] however, provides for a limited application of section 337 where the basis of the property in the hands of the parent is determined by section 334(b)(2).[17]

Section 332 had its origin in the Revenue Act of 1935.[18] Prior to 1935, the liquidation of a subsidiary corporation was a transaction in

---

[15] SEC. 334. BASIS OF PROPERTY RECEIVED IN LIQUIDATIONS.

(b) LIQUIDATION OF SUBSIDIARY.—

(1) IN GENERAL.—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), then, except as provided in paragraph (2), the basis of the property in the hands of the distributee shall be the same as it would be in the hands of the transferor. If property is received by a corporation in a transfer to which section 332(c) applies, and if paragraph (2) of this subsection does not apply, then the basis of the property in the hands of the transferee shall be the same as it would be in the hands of the transferor.

[16] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(c) LIMITATIONS.—

\*       \*       \*       \*       \*       \*       \*

(2) LIQUIDATIONS TO WHICH SECTION 332 APPLIES.—In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 applies with respect to such liquidation, then—

\*       \*       \*       \*       \*       \*       \*

(B) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b)(2), this section shall apply only to that portion (if any) of the gain which is not greater than the excess of (i) that portion of the adjusted basis (adjusted for any adjustment required under the second sentence of section 334(b)(2)) of the stock of the liquidating corporation which is allocable, under regulations prescribed by the Secretary or his delegate, to the property sold or exchanged, over (ii) the adjusted basis, in the hands of the liquidating corporation, of the property sold or exchanged.

[17] Section 334(b)(2) was a codification of the rule of *Kimball-Diamond Milling Co.*, 14 T.C. 74 (1950), affd. 187 F. 2d 718 (C.A. 5, 1951). Essentially, section 334(b)(2) provides that where a corporation purchases the stock of another corporation and within 2 years after the purchase a plan of liquidation is adopted, the basis of the assets of the subsidiary received by the parent is the amount paid for the subsidiary's stock. If a subsidiary sells property after it has adopted a plan of complete liquidation, and section 334(b)(2) applies, section 337 is applicable to the extent that preacquisition appreciation in value is excluded from recognition; however, if the subsidiary sells the property for more than the parent paid for the subsidiary's stock, that part of the gain is recognized and is taxable. But for the limited application of section 337, the formal manner in which transactions were carried out would again be given undue weight. To illustrate this, if the subsidiary sold the property, the amount of recognizable gain would be the difference between what the subsidiary got and its adjusted cost basis. However, if the property was distributed to the parent, the parent, under section 334 (b)(2), would get a stepped-up basis and the amount of recognizable gain would accordingly be reduced. Thus, with the limited application of section 337 the amount of gain is the same whether the subsidiary sells the property or the parent does. Thus this limited application of section 337 carries out the purpose of sections 337 and 334 (b)(2).

[18] Sec. 112(b)(6).

which gain or loss was recognized just as in other liquidations.[19] This general rule was followed even where the subsidiary was merged into its parent under a State merger statute.[20] In order to encourage the simplification of corporate structures and allow the tax-free liquidation of a subsidiary, section 112(b)(6) of the Revenue Act of 1935 was passed.[21]

Thus, prior to 1954, by virtue of section 112(b)(6) of the 1939 Code, a wholly owned subsidiary and parent were not faced with the same problem[22] that confronted other corporations and their shareholders. To illustrate this, assume that a subsidiary had negotiated to sell all of its assets, but in fact the transaction was finally consummated by the parent (shareholder). If there were a determination that the subsidiary made the sale, only one tax would be imposed—on the subsidiary. However, if there were a determination that the parent made the sale, again, only one tax would be imposed—on the parent. The reason for the single tax is that no gain or loss is recognized on the complete liquidation of a subsidiary.[23]

The intent of Congress in enacting section 337 was to eliminate a situation which could lead to double taxation or not, merely because of

[19] *Neptune Meter Co.* v. *Price,* 98 F. 2d 76 (C.A. 2, 1938), on remand (E.D. N.Y. 1939), affirmed per curiam 110 F. 2d 852 (C.A. 2, 1940) ; *National Grocery Co.* v. *Commissioner,* 111 F. 2d 328 (C.A. 9, 1940), affirming a Memorandum Opinion of this Court ; *Frelmont Realty Corporation,* 29 B.T.A. 181 (1933) ; *Trenton Oil Co.* v. *United States,* 41 F. Supp. 887 (E.D. Mich. 1939), affd. 122 F. 2d 1023 (C.A. 6, 1941); *Gulf, M. & N. R. Co.* v. *Commissioner,* 83 F. 2d 788 (C.A. 5, 1936), certiorari denied 299 U.S. 574 (1936) ; *Pierce Oil Corporation,* 32 B.T.A. 403 (1935) ; *Vonnegut Hardware Co.,* 28 B.T.A. 784 (1933) ; *Texas-Empire Pipe Line Co.* v. *Commissioner,* 127 F. 2d 220 (C.A. 10, 1942), reversing 42 B.T.A. 368 (1940) ; *Ford Motor Co.* v. *United States,* 47 F. Supp. 259 (Ct. Cl., 1942).

[20] *Rogan* v. *Starr Piano Co.,* 139 F. 2d 671 (C.A. 9, 1943), certiorari denied 322 U.S. 728 (1944) ; *Frelmont Realty Corporation, supra.*

[21] In his message to Congress on Tax Revision in 1935, President Roosevelt urged by means of "taxation the simplification of our corporate structures through the elimination of unnecessary holding companies in all lines of business." See 4, The Public Papers and Addresses of Franklin D. Roosevelt 276 (1935).

Since, under then-prevailing tax law (secs. 112, 115(c), Revenue Act of 1934), all corporate liquidations were taxable upon distribution to the full extent of gain realized, there had been little incentive to merge subsidiaries with parent corporations. It was apparently to create such an incentive that Senator Harrison, then chairman of the Senate Finance Committee, introduced an amendment to the Revenue Act of 1935 which provided substantially that parent corporations would postpone gain or loss resulting from liquidation of 80 percent controlled subsidiaries until later disposal of the assets by the parent. 79 Cong. Rec. 13239, 13240 (1935).

See hearings before Senate Committee on Finance on H.R. 8974, 74th Cong., 1st Sess., pp. 170, 171, 301–303, for principal arguments advanced in favor of the passage of section 112(b)(6). See also statement by Senator George, 80 Cong. Rec., Part 8, p. 8799 (1936), to the effect that the purpose of section 112(b)(6) is "to permit the simplification of our corporate structures" without the recognition of gain or loss.

[22] The question of whether the sale of corporate property was made by the corporation or the shareholders. Cf. *Commissioner* v. *Court Holding Co., supra,* and *United States* v. *Cumberland Pub. Serv. Co., supra.*

[23] Sec. 112(b)(6), 1939 Code.

the formal manner in which the transaction was carried out. Since there was no possibility of double taxation, with regard to a parent and wholly owned subsidiary, it seems clear that Congress intended to leave the tax consequences resulting from the liquidation of a subsidiary in statu quo. That is, if the subsidiary sold its assets, it would be taxed on the realization of gain or loss or, if the property was distributed to the parent, recognition of gain or loss would be deferred until the parent sold or exchanged the property. Further evidence of this congressional intent is shown by the addition of section 337(d) [24] to the 1954 Code by the Technical Amendments Act of 1958. In explaining the necessity for this amendment, the Senate Finance Committee stated at page 30:

Section 337 of the 1954 Code, however, was not made applicable to sales or exchanges of property by a corporation where the corporation is owned 80 percent by another corporation and where the liquidation is tax free to the majority shareholder with a carryover to the parent corporation of the subsidiary's basis for its assets (sec. 337(c)(2)(A)). *Section 337 was apparently made inapplicable to this situation because there is no tax imposed upon the majority shareholder on the liquidation so that, as to the majority shareholder, there is no possibility of the imposition of two taxes with respect to a sale of property by the liquidating corporation.* However, if there are any minority shareholders in the case of the liquidation of such a subsidiary, those shareholders will be required to pay a tax if the amount received by them on liquidation exceeds their stock basis. *Accordingly, if the subsidiary corporation sells its property before the liquidation, a corporate tax will be payable by the subsidiary, and, in addition, the minority shareholders will be taxed when their share of the proceeds of the sale are distributed to them in complete liquidation.* Your committee believes that it is neither necessary nor desirable to deprive minority shareholders in this situation of the benefits of section 337.

The amendment made by section 21 would add a new rule to section 337 applicable only to minority shareholders. The general effect of this rule is to reduce the tax payable by the minority shareholders on the liquidation. * * * *The new rule is for the sole purpose of insuring that the minority shareholders will be placed in the same position, after taxes, as if there had been no majority corporate shareholder and the subsidiary corporation had been able to utilize section 337.* [S. Rept. No. 1983, to accompany H.R. 8381 (Pub. L. 85–866), 85th Cong., 2d Sess., p. 30 (1958).]

[Emphasis supplied.]

---

[24] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(d) SPECIAL RULE FOR CERTAIN MINORITY SHAREHOLDERS.—If a corporation adopts a plan of complete liquidation on or after January 1, 1958, and if subsection (a) does not apply to sales or exchanges of property by such corporation, solely by reason of the application of subsection (c)(2)(A), then for the first taxable year of any shareholder (other than a corporation which meets the 80 percent stock ownership requirement specified in section 332(b)(1)) in which he receives a distribution in complete liquidation—

(1) the amount realized by such shareholder on the distribution shall be increased by his proportionate share of the amount by which the tax imposed by this subtitle on such corporation would have been reduced if subsection (c)(2)(A) had not been applicable, and

(2) for purposes of this title, such shareholder shall be deemed to have paid, on the last day prescribed by law for the payment of the tax imposed by this subtitle on such shareholder for such taxable year, an amount of tax equal to the amount of the increase described in paragraph (1).

From the history of section 337 and the interrelation of that section with sections 332, 333, 334, and 341, it is apparent that the concern of Congress was to avoid double taxation and not to provide for complete nonrecognition of gain or to change the results called for by the aforementioned sections of the Code. It is equally clear that under section 337 the gain on the sale in question would have been recognized.[25] The question now is whether section 392(b) was intended to provide a different result.

As section 392 [26] emerged from the Senate Finance Committee, its only provisions were that:

Except as otherwise provided in this subchapter, part II shall apply with respect to a plan of liquidation only if the first distribution in pursuance of such plan occurs on or after June 18, 1954.[27] Section 341 shall apply only with respect to sales, exchanges, and distributions on or after June 18, 1954.[28]

At this point, section 337 would have been applicable for only part of 1954. Subsequently, as the 1954 Code was being considered by the Senate, Senator Capehart introduced section 392(b) [29] as an amendment to section 392. This amendment was accepted without further hearings or debate.[30] The following excerpt from the Congressional Record [31] is the only explanation given for the amendment:

Mr. CAPEHART. Mr. President, *the purpose of the amendment is to make the liquidation rules of H.R. 8300 applicable to distributions in liquidation which occur in 1954. In particular, it is intended to have section 337, relating to sales*

---

[25] Since the sale in this case was made before a plan of complete liquidation was adopted, it would not qualify for nonrecognition treatment under section 337(a). To qualify for nonrecognition treatment under section 337(a), a plan of complete liquidation must have been adopted at the time the sale is made. It is to be noted that unless the requirements of section 337(a) are met, the question of whether the limitations of section 337(c) are applicable is never reached.

[26] Introduced in the House as section 391.

[27] As introduced in the House, the date was March 1, 1954. It was amended by the Senate Finance Committee to June 18, 1954, and subsequently changed by the Conference Committee to June 22, 1954.

[28] See footnote 27, *supra*.

[29] SEC. 392. EFFECTIVE DATE OF PART II.
  (b) SPECIAL RULE FOR CERTAIN SALES DURING 1954.—
    (1) NONRECOGNITION OF GAIN OR LOSS.—If—
      (A) all of the assets of a corporation (less assets retained to meet claims) are distributed before January 1, 1955, in complete liquidation of such corporation; and
      (B) the corporation elects (at such time and in such manner as the Secretary or his delegate may by regulations prescribe) to have this subsection apply,
    then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property during the calendar year 1954.
    (2) CERTAIN PROVISIONS OF SECTION 337 MADE APPLICABLE.—For purposes of paragraph (1)—
      (A) the term "property" has the meaning given to such term by section 337(b); except that any determination required by section 337(b) to be made by reference to the date of the adoption of the plan of liquidation shall be made by reference to January 1, 1954; and
      (B) the limitations of section 337(c) shall apply. For purposes of section 453(d)(4)(B) (relating to disposition of installment obligations), nonrecognition of gain or loss under paragraph (1) of this subsection shall be treated as nonrecognition of gain or loss under section 337.

[30] 100 Cong. Rec., Part 7, p. 9452 (1954).

[31] See footnote 30, *supra*, p. 9451.

*made by corporations in process of liquidation, apply to such distributions.* Section 337 eliminates differences which can occur where a liquidating corporation itself sells an asset and distributes the proceeds of sale as opposed to the case where the asset is first distributed in kind to the shareholder and then sold by him. In the first case, that is, the sale by the corporation, there is one tax at the corporation level and another tax at the shareholder level. Section 337 eliminates difficult fact determinations as to whether a sale is made by a corporation or a shareholder in such cases. It provides that there shall be only one tax in any event. [Emphasis supplied.]

Section 392 was again amended when the conference committee added section 392(b)(3).[32] The conference committee, at page 36, gave the following explanation of the amendment:

The second change is contained in an amendment to section 392(b) and would add a new paragraph (3) thereto. Under this amendment, a corporation which adopts a plan of liquidation after December 31, 1953, and before June 22, 1954, and which elects the nonrecognition of gain or loss for sales or exchanges of property provided by section 392(b), may make a supplemental election as to the period for nonrecognition. If the supplemental election is not made, the period for nonrecognition will be the calendar year 1954. However, if the supplemental election is made, the period for nonrecognition will be the 12-month period beginning on the date of the adoption of the plan of complete liquidation, and that period will also be the period within which all distributions pursuant to the plan of liquidation must be made. [H. Rept. No. 2543, 83d Cong., 2d Sess., p. 36 (1954).]

Section 392(b)(1) and (2) provides the same general rules as section 337, with two exceptions.[33] First, under section 392(b)(1) no plan of complete liquidation is required and secondly, the liquidation must have been completed by January 1, 1955.

The history of section 392 makes it clear that its sole purpose was to make the liquidation rules of section 337 applicable for the entire

---

[32] SEC. 392. EFFECTIVE DATE OF PART II.

(b) SPECIAL RULE FOR CERTAIN SALES DURING 1954.—

\* \* \* \* \* \*

(3) PLANS OF LIQUIDATION ADOPTED AFTER DECEMBER 31, 1953, AND BEFORE JUNE 22, 1954.—If the plan of complete liquidation was adopted after December 31, 1953, and before June 22, 1954, then, at the election of the corporation (made at such time and in such manner as the Secretary or his delegate may by regulations prescribe)—

(A) the 12-month period beginning on the date of the adoption of such plan shall be (i) the period for distribution (in lieu of the requirement in paragraph (1)(A) of this subsection that the assets be distributed before January 1, 1955), and (ii) the period during which, by reason of paragraph (1) of this subsection, gain or loss to the corporation is not recognized (in lieu of nonrecognition of gain or loss during the calendar year 1954) ; and

(B) notwithstanding paragraph (2)(A) of this subsection, any determination required by section 337(b) to be made by reference to the date of the adoption of the plan of liquidation shall be made by reference to such date (and not by reference to January 1, 1954).

[33] Conference Report, H. Rept. No. 2543, 83d Cong., 2d Sess., p. 36, 1954.

Section 337 of the Senate amendment provided for nonrecognition of gain or loss to a corporation from the sale or exchange of certain property by it within the 12-month period beginning on the date of the adoption of a plan of liquidation. Section 392(b) of the Senate amendment provided a substantially similar rule applicable (whether or not a plan of liquidation is adopted) with respect to sales or exchanges during the calendar year 1954, but only where the distributions in liquidation are completed before January 1, 1955.

year 1954. Thus, its purpose was to broaden the *period of coverage* and not to broaden the *scope of coverage*.

In section 392(b)(2)(B) Congress specifically said, "the *limitations* of section 337(c) shall apply." (Emphasis supplied.) Section 337(c) was intended to *limit* the applicability of section 337(a) and section 392(b)(1) and should be construed to achieve that result.[34] By section 337(c), Congress specifically excluded certain transactions from the nonrecognition provisions of section 337. It would have been a drastic change of the entire pattern of congressional purpose to allow these transactions to be accorded nonrecognition under section 392(b)(1). To think that such a change was intended or made without further hearings or debate is untenable, the more so when it is realized that this change would have been applicable only in the year 1954 and depended on when or if a useless act (adoption of a plan of complete liquidation) was performed. If the liquidation was one to which section 332 applied, there was no intention that section 337(c) produce a different result whether section 337, section 392(b)(1), or section 392(b)(3) was availed of. This conclusion is further borne out by the following excerpt from the Conference Committee Report, at page 37, where it is stated that:

Section 392(b)(2)(B) provides that the special rule for sales or exchanges by a corporation being liquidated which is contained in section 392(b) *will not be available if the limitations of section 337(c) apply* (that is, among other limitations, if the liquidation is one to which sec. 112(b)(6) of the 1939 Code applies, *or if the liquidation is one to which sec. 332 of the 1954 Code applies*). The limitation of section 392(b)(2)(B) will, of course, apply whether or not the taxpayer, under section 392(b)(3), elects the optional 12-month period. [Emphasis supplied.]

After having considered the history of sections 337 and 392 and their interrelations with sections 341, 333, 332, and 334, we are convinced that to follow petitioner's interpretation of the Code would lead to a result that is unreasonable and plainly at variance with the intention of the legislation as a whole.

Petitioner relies on *Diversified Services, Inc.* v. *United States, supra*, in which the United States District Court held, on facts substantially similar to those in this case, that the gain on the sale should not be recognized. While we have carefully considered the opinion in that case, we do not find its reasoning persuasive.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[34] See *Commissioner* v. *Lester*, 366 U.S. 299, 304 (1961), where the Supreme Court iterated a general rule of construction applicable here: "And, as we have frequently stated, the Code must be given 'as great an internal symmetry and consistency as its words permit.' *United States* v. *Olympic Radio & Television*, 349 U.S. 232, 236 (1955)."