CENTRE FOR INTERNATIONAL UNDERSTANDING, BEATRICE JACOBY, MORTON G. WITZIGREUTER, AND HAROLD B. BAMBURG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Centre for Int'l Understanding v. Commissioner
Docket No. 7521-84
United States Tax Court
T.C. Memo 1991-424; 1991 Tax Ct. Memo LEXIS 473; 62 T.C.M. (CCH) 629; T.C.M. (RIA) 91424; August 27, 1991, Filed *473 Decision will be entered under Rule 155. C, a wholly-owned subsidiary of P, resolved to adopt a plan of complete liquidation and to sell its sole asset, an apartment complex, in exchange for $ 1,100,000 in cash and a $ 500,000 note. The sale was closed on July 16, 1979. C was liquidated on the following day, the cash and note received on the sale being distributed to P. P agreed to be liable as transferee for any tax found to be due and owing by C. Subsequently, R determined that C recognized gain on the sale of the apartment complex. Held, C realized and recognized gain on the sale of its apartment complex pursuant to I.R.C. sec. 337(c)(2)(A). Held further, P is liable as transferee for the tax due on the gain recognized by C. Kent D. Kehr, for the petitioners. William I. Miller, for the respondent. NIMS, Chief Judge. NIMS
MEMORANDUM OPINION On December 27, 1983, respondent issued five notices of deficiency and one notice of transferee liability as follows: Petitioner
Year
Deficiency Centre for Int'l
Dec. 31, 1979
$ 212,334.17
Understanding
Centre for Int'l
Dec. 31, 1976
3,075.57
Understanding,
Dec. 31, 1978
2,556.41
Transferee of the
Oct. 16, 1979
189,695,06
Assets of Colonial
Woods Apartments, Co.,
Transferor
1st Tier 2d Tier (Initial)
(Additional)
Deficiency
Deficiency Centre for Int'l
Dec. 31, 1977
$  3,642.01
$  29,006.00 Understanding
Dec. 31, 1978
4,932.02
30,296.00 Dec. 31, 1979
10,975.09
86,599.25 Beatrice Jacoby
Dec. 31, 1977
2,334.50
42,346.00 Dec. 31, 1978
2,280.00
45,496.00 Dec. 31, 1979
2,525.00
60,496.00 Morton G. Witzigreuter
Dec. 31, 1977
4,346.30
53,842.00 Dec. 31, 1978
4,004.40
56,992.00 Dec. 31, 1979
3,962.00
71,992.00 Harold B. Bamburg
Dec. 31, 1977
3,471.30
48,842.00 Dec. 31, 1978
2,804.40
48,992.00 Dec. 31, 1979
3,587.00
68,992.00 *474 After concessions, the sole issue for decision is whether the gain realized on the sale of an apartment complex, in a complete liquidation of a subsidiary corporation wholly owned by Centre for International Understanding (petitioner), is required to be recognized. If we conclude that the gain is to be recognized, the parties agree that petitioner, as transferee of the sale proceeds, is liable for the tax due thereon for the taxable years 1976, 1978 and 1979. (Section references are to the Internal Revenue Code as in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.) Background
This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, a Missouri nonprofit corporation, was organized in 1969. At the time of the filing of the petition in this case, petitioner's principal place of business was in St. Louis, Missouri. On December 27, 1983, the Internal Revenue Service issued a final adverse determination letter to petitioner revoking its exempt status. The question of petitioner's exempt status was subsequently resolved by this Court in *475 a case assigned docket No. 7520-84X, wherein the Court entered a stipulated decision providing that: petitioner is exempt from taxation under I.R.C. section 501(a) and is qualified as an organization described in I.R.C. section 501(c)(3) from the date of its incorporation.
Colonial Woods Apartment Co. (Colonial) was a wholly owned subsidiary of petitioner during the years in issue. Colonial's sole asset was an apartment complex located in St. Louis, Missouri. Colonial purchased the apartment complex in 1971, assuming and taking title to the property subject to a deed of trust dated April 23, 1965, in the principal amount of $ 840,000. Colonial generated income by renting apartments to persons unrelated to Colonial or petitioner. Colonial's operation was not substantially related to the purposes for which petitioner was formed. On May 3, 1979, Colonial passed a resolution whereby it adopted a plan of complete dissolution and liquidation, and sale of its apartment complex for $ 1,600,000. On the same day, Colonial executed a contract of sale for the apartment complex which was backdated to May 1, 1979. Petitioner consented to Colonial's adoption of the plan. On June *476 16, 1979, Colonial executed an amendment to the original contract of sale, backdated to June 15, 1979, extending the closing date of the sale and granting Colonial the authority to assign its right under the contract without the purchaser's consent. On July 16, 1979, Colonial adopted a resolution to assign its interest under the contract of sale to petitioner and to transfer the real estate and personal property being sold to petitioner. On the same day, petitioner by resolution accepted the assignment of Colonial's interest in the contract of sale and agreed to transfer the real estate and personal property being sold to the purchaser. The sale of the apartment complex was closed on July 16, 1979. On that date, Colonial's adjusted basis in the property was $ 893,530. In consideration for its sale of the apartment complex, Colonial received $ 1,100,000 in cash and a $ 500,000 note. At the time of the sale, the property was subject to the deed of trust dated April 23, 1965. On July 17, 1979, Colonial liquidated, distributing the cash and note received on the sale to petitioner. As transferee of Colonial's assets, and in consideration of the Commissioner's agreement not to issue *477 a notice of deficiency to Colonial, petitioner executed a transferee agreement (Form 2045) assuming and agreeing to pay any and all Federal income taxes due and payable by Colonial for the taxable years 1976, 1978 and 1979. Consistent with the transferee agreement, respondent did not issue a notice of deficiency to Colonial. Rather, on December 27, 1983, respondent issued a notice of transferee liability to petitioner as transferee of the assets of Colonial for the years in issue. Respondent determined that petitioner, as transferee, failed to report long-term capital gains of $ 646,470 realized on the sale of the apartment complex in 1979. Petitioner filed a timely petition with this Court on March 22, 1984. Petitioner argues that it is not currently taxable as transferee of the gain realized by Colonial on the sale of the apartment complex because the gain is not recognized by Colonial pursuant to section 337(a). In conjunction with this argument, petitioner asserts that its basis in the property is determined pursuant to section 514(d). Discussion
The narrow question presented is whether Colonial's sale of the apartment complex caused Colonial to recognize gain. In *478 this regard, sections 332 and 337 set forth special rules concerning the recognition of gain or loss on transfers of property made in contemplation of the complete liquidation of a subsidiary corporation into its parent corporation. Section 332, entitled "Complete Liquidations of Subsidiaries," provides in pertinent part: (a) GENERAL RULE. -- No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.
Thus, section 332(a) provides a general rule under which no gain or loss will be recognized to a parent corporation on a distribution of property made in the course of the complete liquidation of a subsidiary corporation. Section 332(b) in turn defines the liquidations to which the section applies. In particular, effective as of the date of the sale in question, section 332(b) provided in pertinent part that a distribution is considered to be in complete liquidation only if: (1) The corporation receiving such property was, on the date of the adoption of the plan of liquidation and has continued to be at all times, until the receipt of the property, the owner of stock (of the other corporation) *479 possessing at least 80 percent of the total combined voting power and owner of at least 80 percent of the total number of shares of all other classes of stock, and (2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year. (Section 332(b) was later amended by section 1804(e)(6)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2803.) The parties do not dispute that the liquidation of Colonial qualified as a complete liquidation as defined in section 332(b). Moreover, there is no dispute that the sale was effected by Colonial, as opposed to petitioner. Thus, consistent with section 332(a), no gain is recognized by petitioner in its capacity as parent corporation to Colonial. The parties do disagree, however, as to whether Colonial recognized gain on the sale of the apartment complex pursuant to section 337. If Colonial did recognize gain, as respondent contends, then by reason of the above-mentioned transferee agreement petitioner is liable for the tax due thereon as transferee of the sale proceeds. Effective as of the time of the sale of the apartment *480 complex, section 337 provided in pertinent part: GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) GENERAL RULE. -- If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. * * * (c) LIMITATIONS. -- * * * (2) LIQUIDATIONS TO WHICH SECTION 332 APPLIES. -- In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 applies with respect to such liquidation, then -- (A) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b)(1), this section shall not apply; * * *
In sum, no gain or loss is recognized by a subsidiary corporation from the sale or exchange of property on a distribution of its assets in complete liquidation unless: (1) Section 332 applies with respect to the liquidation; and (2) the basis of the property distributed *481 to the parent corporation is determined under section 334(b)(1). Petitioner asserts that its basis in the distributed property is determined pursuant to section 514(d), as opposed to section 334(b)(1), and therefore the limitation provided in section 337(c)(2)(A) does not apply to override the general rule for nonrecognition set forth in section 337(a). In support of its position, petitioner asserts that the apartment complex was "debt-financed" property as defined in section 514(b)(1). Respondent counters that section 334(b)(1) provides the rule for determining the basis of the property distributed by Colonial to petitioner, and therefore Colonial recognized gain on the sale of the apartment complex by virtue of the limitation on nonrecognition treatment set forth in section 337(c)(2)(A). Respondent contends that if the proceeds from the sale of the apartment complex are not taxed as currently recognized income to Colonial, the effect of the distribution to petitioner is to exclude the realized gains from income permanently since petitioner is an exempt organization. Respondent further contends that petitioner's reliance on section 514(d) is misplaced because Colonial did not *482 distribute debt-financed property. Rather, Colonial distributed proceeds from the sale of property that might have qualified as debt-financed property. We agree with respondent. Prior to 1935, the liquidation of a subsidiary corporation was treated as a taxable event requiring current recognition of any gain or loss realized on the transaction in the same manner as in the case of other corporate liquidations. See Tri-Lakes S.S. Co. v. Commissioner, 146 F.2d 970, 972 (6th Cir. 1945), revg. a Memorandum Opinion of this Court; J.C. Penney Co. v. Commissioner, 37 T.C. 1013, 1020-1021 n.19 (1962), affd. 312 F.2d 65 (2d Cir. 1962); 11 J. Mertens, Law of Federal Income Taxation, sec. 42.43, p. 117 (1991 rev.). Such treatment raised the possibility of so-called double taxation. Specifically, one tax could be imposed on the subsidiary corporation for gain realized on the sale of its assets prior to liquidation, while a second tax could be applied against the parent corporation/shareholder for gain realized on the liquidation. See J.C. Penney Co. v. Commissioner, 37 T.C. at 1017-1018; see also B. Bittker & J. *483 Eustice, Federal Income Taxation of Corporations and Shareholders, par. 11.06, pp. 11-19 (5th ed. 1987). In 1935, however, Congress enacted section 112(b)(6) to provide that parent and wholly-owned subsidiary corporations would be excepted from the potential for double taxation upon the complete liquidation of the subsidiary. See sec. 110 of the Revenue Act of 1935, Pub. L. 74-407, 49 Stat. 1020. Specifically, section 112(b)(6) (the predecessor to section 332) set forth the general rule that no gain or loss would be recognized to the parent corporation upon the receipt of property distributed in complete liquidation of another controlled corporation. We explained the workings of section 112(b)(6) in J.C. Penney Co. v. Commissioner, 37 T.C. at 1021, as follows: assume that a subsidiary had negotiated to sell all of its assets, but in fact the transaction was finally consummated by the parent (shareholder). If there were a determination that the subsidiary made the sale, only one tax would be imposed -- on the subsidiary. However, if there were a determination that the parent made the sale, again, only one tax would be imposed -- on the parent. The reason *484 for the single tax is that no gain or loss is recognized on the complete liquidation of a subsidiary. [Fn. ref. omitted.]
See also Cherry-Burrell Corporation v. United States, 367 F.2d 669, 675 (8th Cir. 1966); Tri-Lakes S.S. Co. v. Commissioner, 146 F.2d at 973. In the alternative, section 112(b)(6) allowed for a deferral of tax if the parent corporation elected to retain the assets distributed in liquidation. Specifically, the subsidiary corporation's basis in the assets would carry over to the parent, with the parent recognizing gain or loss upon final disposition of the assets. See J.C. Penney Co. v. Commissioner, 37 T.C. at 1022. (This result was effectuated through the basis rules set forth in section 113(a)(6) of the Revenue Act of 1934, Pub. L. 73-216, 48 Stat. 706-707.) In contrast to the treatment afforded liquidations in the parent-subsidiary context, it remained necessary prior to 1954 to determine whether a liquidating corporation made a sale of its assets or whether the assets were actually sold by the corporation's shareholders subsequent to a distribution of property in complete liquidation. If *485 the assets were found to have been sold by the corporation, a tax was imposed at both the corporate and shareholder levels, whereas if the assets were sold by the shareholders, a single tax was imposed on the shareholders. See J.C. Penney Co. v. Commissioner, 37 T.C. at 1017-1018 (contrasting the decision in United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 94 L. Ed. 251, 70 S. Ct. 280 (1950), with the decision in Commissioner v. Court Holding Co., 324 U.S. 331, 89 L. Ed. 981, 65 S. Ct. 707 (1945)). Section 337, codified in the Internal Revenue Code of 1954, Pub. L. 83-591, 68A Stat. 106, was enacted to provide, among other things, a definitive rule allowing the shareholders of a liquidating corporation to avoid double taxation consistent with the treatment afforded taxpayers under the parent-subsidiary provisions. See S. Rept. No. 1622, 83d Cong., 2d Sess 48-49, 258 (1954); J.C. Penney Co. v. Commissioner, 37 T.C. at 1017-1018, 1022. Referring to the legislative history of the Technical Amendments Act of 1958, Pub. L. 85-866, 72 Stat. 1606, we explained in J.C. Penney Co. v. Commissioner, 37 T.C. at 1021-1022, that: The intent *486 of Congress in enacting section 337 was to eliminate a situation which could lead to double taxation or not, merely because of the formal manner in which the transaction was carried out. Since there was no possibility of double taxation, with regard to a parent and wholly owned subsidiary, it seems clear that Congress intended to leave the tax consequences resulting from the liquidation of a subsidiary in status quo. * * *
Further, by limiting the applicability of section 337(a), through section 337(c), Congress expressed an intent to avoid permitting the complete avoidance of all income tax which a combined reading of sections 332 and 337 might otherwise foster. J.C. Penney Co. v. Commissioner, 37 T.C. at 1018, 1023. As previously discussed, petitioner, as the parent corporation of Colonial, did not recognize any gain or loss with respect to the complete liquidation of Colonial. See sec. 332(a). In light of the application of section 332(a), however, we conclude that Colonial was required to recognize the gain it realized on the sale of the apartment complex by virtue of former section 337(c)(2)(A) (see supra p. 8). In reaching this conclusion, *487 we necessarily reject petitioner's argument that section 337(c)(2)(A) does not apply to defeat nonrecognition treatment as to Colonial. Petitioner maintains that the exception to nonrecognition as provided in section 337(c)(2)(A) does not apply under the circumstances here because the cash and note Colonial distributed to petitioner do not fall within the meaning of the term "property" as contemplated in section 337. Relying on B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 11.41, pp. 11-44 (5th ed. 1987), petitioner asserts that it makes no sense to attempt to apply the carryover basis rule set forth in section 334(b)(1) to the cash and note distributed in this case. Rather, petitioner asserts that the term "property" should be read as referring to the property sold -- in this case the apartment complex, which was debt-financed property under section 514(d). We disagree. During the years in issue, section 334(b)(1) provided in pertinent part: (1) IN GENERAL. -- If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), then, except as provided in *488 paragraph (2), the basis of the property in the hands of the distributee shall be the same as it would be in the hands of the transferor. * * *
In sum, section 334(b)(1) provides for a carryover basis to the parent corporation with respect to property distributed in complete liquidation of a subsidiary corporation, thereby preserving the ultimate recognition of gain attributable to the transferred property. Notably, petitioner saw fit to quote in its brief only a portion of the Bittker & Eustice treatise relevant to the issue of whether section 334(b)(1) should apply to a cash distribution. Consistent with our opinion in J.C. Penney Co. v. Commissioner, supra, the treatise provides in pertinent part: It has been held that the term "property" as used in § 332 includes cash, so that a liquidation in which nothing but money is distributed is within § 332. Although § 334(b)(1), requiring the parent to carry over the subsidiary's basis for the distributed assets, cannot be applied to a distribution of money, the cited cases point out that the subsidiary will have recognized gain or loss on disposing of its assets, so that the function of § 334(b)(1) *489 has already been discharged. * * * [Bittker & Eustice, supra at par. 11.41, pp. 11-44. Emphasis added.]
See also Tri-Lakes S.S. Co. v. Commissioner, 146 F.2d at 973; International Investment Corporation v. Commissioner, 11 T.C. 678, 685 (1948), affd. 175 F.2d 772 (3d Cir. 1949). Thus, it follows that section 334(b)(1) applies to the transaction in question, and we so hold. Finally, we reject petitioner's contention that section 514(d) applies to counter the effect of section 337(c)(2)(A) in this case. Section 514(d) sets forth the rule for determining an exempt organization's basis in debt-financed property acquired in a corporate liquidation, providing in pertinent part: (d) BASIS OF DEBT-FINANCED PROPERTY ACQUIRED IN CORPORATE LIQUIDATION. -- For purposes of this subtitle, if the property was acquired in a complete or partial liquidation of a corporation in exchange for its stock, the basis of the property shall be the same as it would be in the hands of the transferor corporation, increased by the amount of gain recognized to the transferor corporation upon such distribution and by the amount of any gain *490 to the organization which was included, on account of such distribution, in unrelated business taxable income under subsection (a).
We need merely point out that petitioner did not acquire the apartment complex in the liquidation of Colonial. Instead, petitioner acquired the proceeds of the sale -- the cash and note. Accordingly, section 514(d) by its terms cannot apply in this case. To reflect the foregoing, Decision will be entered under Rule 155.