BADI ZOHOURY and WILMA J. ZOHOURY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zohoury v. Commissioner
Docket Nos. 11566-80, 23910-81.
United States Tax Court
T.C. Memo 1983-597; 1983 Tax Ct. Memo LEXIS 193; 46 T.C.M. (CCH) 1521; T.C.M. (RIA) 83597; September 26, 1983. Fred A. Foley, for the petitioners. F. Michael Kovach, Jr., for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent *196 determined deficiencies in petitioner's Federal income tax as follows: Tax Year
Deficiency
1977
$27,316.00
1978
13,781.71
After concessions by the petitioners, the issues are: (1) whether funds transferred to petitioners from Zabih Zohoury, Irene Warren and F. Momtoz were bona fide loans; (2) if so, whether any payments made with respect to these loans during 1977 and 1978 constituted interest and the amount thereof; and, if so, (3) how much of such interest is deductible in tax years 1977 and 1978. FINDINGS OF FACT Some of the facts are stipulated and are so found. The exhibits are also incorporated herein by this reference. Petitioners Badi and Wilma Zohoury (hereinafter sometimes "Badi" and "Wilma"), were residents of Troy, Michigan, at the time they filed their petitions herein. For calendar years 1977 and 1978, petitioners' joint returns were timely filed with the Internal Revenue Service, and were prepared on the cash receipts and disbursements basis.
On Schedule A of their 1977 tax return, petitioners claimed deductions for interest paid as follows: Home Mortgage
$ 3,876
Wayne Oakland Bank
3,591
Z. Zohoury
49,200
Irene Warren
2,000
F. Momtoz
1,350
Internal Revenue
2
Michigan National
8,071
Merrill Lynch
13,397
Total
$81,487
*197 On Schedule A of their 1978 tax return, petitioners claimed similar deductions for interest as follows: Home Mortgage
$ 3,751
Wayne Oakland Bank
2,724
Z. Zohoury
22,000
Irene Warren
2,000
F. Momtoz
2,000
Internal Revenue
8
Michigan National
7,646
Merrill Lynch
16,672
Rochester Road Pension Plan
3,049
Total
$59,850
In his notices of deficiency, respondent disallowed the deductions claimed for interest paid to Zabih Zohoury, Irene Warren, and F. Momtoz for tax years 1977 and 1978. Petitioners' tax returns also reveal that during 1977, they received $17,250 of dividend income, gross rents of $10,800 from the Clawson Office Building, and $4,914 of short-term capital gains attributable to the disposition of certain property held for investment. During 1978, petitioners also reported $20,146 of dividend income, $10,800 of gross rents, and short-term capital gains of $30,593. No interest income or royalty payments were reported by petitioners for either year. In 1977, petitioners offset their gross rental income by claiming expenses of $2,989 for property taxes paid during this calendar year on this rental property. They further offset their *198 1977 rental income by claiming $1,503 as an interest expense deduction. In 1978, petitioners offset their rental income by claiming expenses of $3,187 for property taxes, and $1,205 for interest. Petitioners claimed a $1,345 depreciation deduction on this property for both years. Beginning in June of 1969, and continuing through May of 1970, Zabih Zohoury (Badi's brother) transferred $115,977.50 out of Iran, and into the United States. Initially, Badi and Wilma Zohoury were to receive, and to hold, these funds for petitioner's brother until he could become a resident of this country. Subsequently, Zabih Zohoury (hereinafter "Zabih") apparently had problems with the U.S. Immigration authorities, and was not allowed to become a U.S. resident. Upon learning of his brother's misfortune, Badi asked whether he and his wife could borrow the funds his brother had put in Badi's hands. Zabih, a person of considerable financial means, agreed to loan $110,000 to petitioners subject to negotiations to determine a repayment schedule, and an appropriate rate of interest to charge for the use of this money. These details were subsequently worked out between the two brothers. In February *199 of 1970, Badi and Wilma wrote and signed a document acknowledging that they had borrowed $110,000 from Zabih. [1] Of the $115,977.50 transferred to petitioners during 1969 and 1970, only $110,000 was treated as a loan, because petitioners had paid American Express bills, and had acquired a car on Zabih's behalf. The terms of the acknowledgment executed by petitioners specified that they promised to pay a 10% annual interest rate on the loan for the first three years. [2] It was further stated that if the principal portion of the debt had not been repaid within this period, petitioners would thereafter pay a 20% annual interest rate. *200 Petitioners borrowed these funds in order to invest in the United States stock market, and to meet margin calls on previous investments. During this same period petitioners also borrowed additional funds from various banks for this same purpose. Badi believed that he would be able to repay the $110,000 loan within the first three years, since he was a doctor and had a good medical practice. Due to setbacks on the stock market, however, Badi suffered losses, and felt unable to make principal repayments on the $110,000 loan during 1970 through 1978. From 1970 through 1978, the following payments were made by petitioners to Zabih: 1970
$10,139.50
1971
10,992.00
1972
11,671.58
1973
13,200.00
1974
12,100.00
1975
9,200.00
1976
13,200.00
1977
48,370.00
1978
22,000.00
Additionally, petitioners paid $3,600 to the Internal Revenue Service on December 7, 1977, on behalf of Zabih as taxes withheld on interest income, and a further $1,286 was so paid in 1978. [3] All of petitioners' payments to Zabih were sent to him in Paris, France. *201 From 1970 through 1978, Badi and Wilma were delinquent in making the required payments under the terms of the February 1970 acknowledgment. Petitioners' payments and arrearages to Zabih were as follows: Interest Due
Amount
Interest
Pursuant to February
Year
of Loan
Rate
1970 Acknowledgment
1970
$110,000 X
.10
$11,000
1971
110,000 X
.10
11,000
1972
110,000 X
.10
11,000
1973
110,000 X
.20
22,000
1974
110,000 X
.20
22,000
1975
110,000 X
.20
22,000
1976
110,000 X
.20
22,000
1977
110,000 X
.20
22,000
1978
110,000 X
.20
22,000
Annual
Amount
Cummulative
Payments
In
Amount in
Year
Made
Arrears
Arrears
1970
$10,139.50
$860.50 $860.50
1971
10,992.00
8.00 868.50
1972
11,671.58
(671.58)
196.92
1973
13,200.00
8,800.00 8,996.92
1974
12,100.00
9,900.00 18,896.92
1975
9,200.00
12,800.00 31,696.92
1976
13,200.00
8,800.00 40,496.92
1977
51,970.00
(29,970.00)
10,526.92
1978
23,286.00
(1,286.00)
9,240.92
During 1977 and 1978, petitioners were indebted to Zabih in the amount of $110,000, and the payments made to him during these calendar years *202 constituted interest on bona fide indebtedness. During 1969, Irene Warren (Wilma's mother) transferred $20,000 to Badi and Wilma.During this same calendar year, F. Momtoz (Badi's sister) transferred $12,000 to petitioners. In both instances, petitioners used these funds for investment, and to meet margin calls resulting from large losses that they had sustained on the stock market. Petitioners transferred $2,000 to Irene Warren in each of the years 1977 and 1978. They further transferred $1,350 to F. Momtoz in 1977, and $2,000 in 1978. OPINION On their 1977 and 1978 joint income tax returns, petitioners claimed substantial interest expense deductions including $52,550 of interest allegedly paid during 1977 by petitioners to Zabih Zohoury, Irene Warren and F. Momtoz and $26,000 of interest allegedly paid to these same individuals during 1978. In his notices of deficiency, respondent disallowed all of the above interest expense deductions on the basis that the payments, if in fact made to Zabih Zohoury, Irene Warren and F. Momtoz (which respondent challenged), did not constitute interest on bona fide indebtedness. Petitioners disagree, and claim that the monies received from *203 Zabih, Irene Warren and F. Momtoz were bona fide loans, and that the payments made to these individuals during 1977 and 1978 constituted deductible interest. Petitioners further assert, relying upon Helvering v. Taylor,293 U.S. 507 (1935), that the deficiencies determined against them are arbitrary, capricious, and clearly excessive, and the burden of going forward should be shifted to the Commissioner. In resolving the issues now before us, we first consider petitioners' contention that respondent's notices of deficiency were arbitrary and capricious. Petitioners argue that the facts and documents submitted to respondent before trial prove that the payments made to Zabih Zohoury, Irene Warren and F. Momtoz, were interest on bona fide indebtedness. They further assert that these documents establish the exact amounts of interest paid to these individuals during 1977 and 1978. It is petitioners' position that it is unfair, as a matter of public policy, to require petitioners to expend substantial sums of money and time to prove they are entitled to a deduction, when the evidence is overwhelmingly in their favor. On January 30, 1981, the petitioners filed a *204 motion herein for partial summary judgment. In their motion, petitioners took the same position that they take here, and claimed that there were no genuine issues of fact regarding the very interest deductions now in issue. In Zohoury v. Commissioner,T.C. Memo. 1981-297, this Court disagreed, and held, inter alia, that where intra-family loans are involved, such transactions must be carefully scrutinized to determine whether bona fide debts were created. It was concluded that there were substantial questions of fact presented which precluded disposition of the case by summary judgment. The trial of this case, and the record thus produced, demonstrate how abundantly right that decision was. The alleged facts and documents presented to respondent during the audit process, apparently consisting of much the same material as was presented at trial herein, were not self-proving, and respondent did not have to take them at face value, cf. Armes v. Commissioner,448 F.2d 972 (5th Cir. 1971), affg. in part a Memorandum Opinion of this Court. Petitioners here seek to have us declare respondent's statutory notices not only wrong, but arbitrary and *205 capricious. Except in extraordinary circumstances, we will not look behind respondent's statutory notice to see what went on between the parties at the administrative level; the trial before us is de novo. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974). We find no such extraordinary circumstances here. Petitioners have the usual burden of proof in showing that respondent's determination was erroneous, Welch v. Helvering,290 U.S. 111 (1933), and since the issues involve claimed deductions, must also show that they are entitled to such deductions, and the amount thereof, see Helvering v. Taylor,293 U.S. 507, 514 (1935). We accordingly turn to the main controversy.
I. Bona Fide Indebtedness
Section 163(a) states the general rule that a taxpayer is allowed to claim a deduction on "all interest paid or accrued within the taxable year on indebtedness." [4]
The United States Court of Appeals for the Eighth Circuit has stated: *206 A debt is "that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or perform for his benefit." Webster's New International Dictionary. * * * The term "indebtedness" as used in the Revenue Act implies an unconditional obligation to pay. Any definition more flexible would only encourage subterfuge and deception. [Gilman v. Commissioner,53 F.2d 47, 50 (8th Cir. 1931)]. [5]
In this case, funds in various amounts were transferred to petitioners from three separate family members -- Badi's brother, his sister and Wilma's mother.In each instance, petitioners claim that the money was truly lent to them, at specified interest rates. *207 Where, as here, the transaction giving rise to the claimed indebtedness is between family members, the evidence presented to establish such a debt must be closely scrutinized. See Woodward v. United States,208 F.2d 893 (8th Cir. 1953); Wales v. Commissioner,T.C. Memo. 1978-125, affd. without published opinion (9th Cir. 1980). The relevant Court decisions dealing with intra-family loans have identified several factors that have been given weight in determining whether a purported loan was in fact a bona fide debt. These factors include: (1) Whether a specific rate of interest is charged to the taxpayer for the use of the money; (2) whether there is a specific date for repayment; (3) whether there is a written instrument evidencing the debt; (4) whether there is a legitimate purpose for obtaining the loan; (5) whether the taxpayer intended to repay the debt; (6) whether the relative receiving the payments on the loan was impecunious; and (7) whether the loan has economic substance. [6]
*208 When the above criteria are applied to the transfers of money to petitioners by Zabih, it is our conclusion that a bona fide debt was created. Petitioners' testimony and documentary evidence submitted at trial establishes to our satisfaction that petitioners borrowed $110,000 from Zabih in 1970. A written instrument acknowledging this debt was executed, and it was agreed that petitioners would pay a 10% annual rate of interest for the first three years, and a 20% annual rate of interest thereafter.Further, a legitimate purpose existed for requesting this loan: petitioners needed additional funds to meet margin calls on investments that they had in the United States stock market. We have no reason to doubt petitioners when they testified that they fully intended to repay this money. Finally, the person receiving the payments in the transaction (Zabih) was an individual of financial substance, and not an impoverished family member. Nothing in the record would suggest that this loan was a sham, or lacked economic substance. On brief, respondent asserts that petitioners have failed to carry their burden of showing that this intra-family loan was a bona fide debt. Respondent argues *209 that petitioners have failed to show a specific repayment schedule for the loan from Zabih. He also directs our attention to the fact that petitioners gave nothing of value to Zabih to secure the repayment of these funds. Finally, respondent claims that this transaction as a whole lacks the legal trappings that would normally accompany a loan of this size. We find none of these arguments persuasive. The terms of the February 1970 acknowledgment (hereinafter "the loan agreement") imply, and petitioners' testimony confirms, that the loan was intended to be repaid within three years. The loan agreement also provides that if the loan was not repaid within three years, the interest to be charged would rise from 10% to 20% per annum. Under these circumstances, the lack of a maturity date does not give rise to an inference that this transaction was anything other than a bona fide loan. The increase in the annual interest charge from 10 to 20% after three years is significant under the facts herein, and should be viewed as something analogous to a penalty or damage clause. We also attach little significance to the fact that this loan was unsecured, or lacked the usual legal trappings *210 that an attorney might utilize when drafting such an agreement. Intra-family loans are many times informal arrangements which may not comply with all of the customary legal formalities that would surround a commercial loan. Although, the loan agreement was not a model of drafting perfection, we find that it constitutes sufficient evidence to establish the existence, and terms, of a bona fide debt. See Dorzback v. Collison,195 F.2d 69 (3d Cir. 1952); Barton v. Commissioner,T.C. Memo. 1979-234. We note that neither party argues that this is an unenforceable obligation under state law. The evidence supports a finding that there was a written agreement to lend money, and that this agreement was supported by adequate consideration. Under Michigan law, in an action to recover money advanced as a loan, it is not necessary to prove an express contract to repay. In Re Heiler's Estate,288 Mich. 49, 284 N.W. 641 (1939). Here we have an express written contract which adequately sets out the terms and conditions for the loan. As a written agreement, it also complies with the Michigan Statute of Frauds, see Mich. Comp. Laws, sec. 566.132. *211 Accordingly, we conclude that this agreement is an enforceable obligation under Michigan law, and a bona fide debt for purposes of section 163. Unfortunately for petitioners, a similar analysis leads us to a different conclusion with regard to the purported loans from Irene Warren and F. Momtoz. We have found that Irene Warren transferred $20,000 to petitioners in 1969. We have also found that F. Momtoz transferred $12,000 to petitioners during this same year. We have further found that petitioners transferred $2,000 to Irene Warren in each of the years 1977 and 1978, and further transferred $1,350 to F. Momtoz in 1977, and $2,000 in 1978. Yet, having established the above, petitioners have failed to carry their burden of showing that the transfer of the funds resulted in bona fide indebtedness, or that the amounts transferred by them in the years before us constituted interest thereon. Neither of these alleged loans was evidenced in writing, [7] nor did petitioners establish a specific timetable for the repayment of these funds. These "loans" were admittedly unsecured, and, absent petitioners' rather vague testimony, we have no way of knowing if there was a specific interest *212 rate charged for the use of this money. Although petitioners' testimony is not inherently incredible, it is our job to determine whether the transfer of these funds during 1969 constituted bona fide debt and whether any interest thereon was paid by petitioners in 1977 and 1978. In the absence of any documentary evidence, or the corroborating testimony of a third party, [8] we do not believe that there is sufficient independent evidence in the record to establish these facts. Of the three intra-family loans at issue, petitioners have failed to prove that a bona fide debt existed between themselves, and anyone other than Zabih. To the extent that the claimed interest expense deductions now in issue are attributable to payments made to Irene Warren and F. Momtoz, we hold for the respondent. Rule 142(a); Welch v. Helvering,supra.
*213 II Interest
Although we have found that a bona fide debt existed during the years in issue between petitioners and Zabih, the burden of proof is on the petitioners to show that the payments made on this loan during 1977 and 1978 constituted interest. Under the terms of the loan agreement, petitioners were required, during 1970, 1971 and 1972, to pay Zabih $11,000 annually as interest on their outstanding $110,000 loan. Thereafter, if not repaid, the interest charge would double to $22,000 per year. Our findings show the amounts of interest due in each of the years 1970 through 1978, and the payments made by petitioners in each year with respect to the loan.Our findings further show that in no year did petitioners' payments exceed accrued and unpaid interest for the current and prior years. Voluntary partial payments on an interest-bearing obligation are to be applied to matured interest first, with any remaining surplus being applied to principal, absent a stipulation of the parties to the contrary. Ferenc v. Commissioner,T.C. Memo. 1974-30, and cases therein *214 cited. Application of the rule in this case results in all petitioners' payments to Zabih in 1977 and 1978 being treated as interest. [9]
Petitioners thus paid interest to Zabih Zohoury of $51,970 in 1977, and $23,286 in 1978. [10] But for the limiting provisions of section 163(d), next discussed, such payments would be deductible by petitioners under the provisions of section 163(a). III The Limitation of Section 163(d)
Although petitioners paid interest on bona fide indebtedness to Zabih during 1977 and 1978, the same Code section which permits interest to be deducted also limits the amount *215 of such a deduction, if such interest results from investment indebtedness. Section 163(d). [11]
*216 We have found that petitioners borrowed $110,000 from Zabih in order to invest in the stock market, and to meet margin calls on previous investments. The interest paid to Zabih during the years in issue thus constituted investment interest within the meaning of section 163(d)(3)(D), and the limitation imposed by section 163(d) is applicable. The limitation is that investment interest shall be allowable as a deduction to the extent of $10,000, plus petitioners' net investment income for a given tax year. Section 163(d)(1).The term "net investment income" means the excess of investment income over investment expenses. Section 163(d)(3)(A). On their tax return for 1977, petitioners reported investment income from dividends in the amount of $17,250, gross rents of $10,800, and net short-term capital gains of $4,914. No other income was reported in this tax year which would qualify as investment income under section 163(d)(3)(B). Therefore, for 1977 petitioners disclosed gross investment income of $32,964. During this same year, petitioners reported no investment expenses other than *217 those relating to a rental office building. Of these expenses, petitioners claimed deductions under sections 164 and 167 totaling $4,334. [12] The above deductions, claimed for depreciation and property taxes, qualify as investment expenses under section 163(d)(3)(C). Petitioners thus had $28,630 of net investment income during 1977. Under the provisions of section 163(d)(1), petitioners' maximum allowable deduction for investment interest in 1977 was therefore $38,630. Petitioners claimed $81,487 as interest expense deductions on Schedule A of their 1977 tax return. As we have held, the $3,350 of "interest" attributable to the purported loans from Irene Warren and F. Momtoz is not deductible. It is also clear that the $2 of interest paid to the Internal Revenue Service and $3,876 of home mortgage interest is not investment interest. The $1,503 *218 of interest deducted with respect to their rental property was clearly investment interest. Excluding the claimed payment to Zabih for the moment, there is no way to determine whether the remaining $25,059 deducted on Schedule A was or was not investment interest. Petitioners have the burden of showing the amount of the interest expense deduction to which they are entitled, including any limitations imposed by the relevant statute, section 163(d). Helvering v. Taylor,supra;Burnet v. Houston,283 U.S. 223 (1931); Estate of Luehrmann v. Commissioner,287 F.2d 10, 15 (8th Cir. 1961).Petitioners having failed to offer evidence on the nature of the remaining $25,059 of interest expense claimed on Schedule A of their 1977 tax return, for purposes of this case we must treat it as investment interest. As a result, we conclude that petitioners had already used $26,562 (i.e., $25,059 plus $1,503) of the permissible $38,630 investment interest deduction before any interest attributable to Zabih can be considered. Therefore, petitioners *219 are only entitled to deduct $12,068 of the $51,970 interest which they paid to Zabih during 1977. The balance of $39,902 is disallowed investment interest for 1977. Section 163(d)(3)(E). Petitioners' tax return for 1978 discloses that petitioners received dividend income of $20,146, gross rents of $10,800, and short-term capital gains of $30,593. Petitioners thus had a total of $61,539 of gross investment income during 1978.Section 163(d)(3)(B). Petitioners' investment expenses during 1978 were again limited to deductions claimed in relation to petitioners' rental property: depreciation of $1,345, and property taxes of $3,187, which qualify as investment expenses within the meaning of section 163(d)(3)(C). Petitioners' total investment expenses thus totaled $4,532 during 1978. Petitioners thus had net investment income during 1978 of $57,007, and the maximum allowable deduction for investment interest in 1978 is limited to $67,007. Section 163(d)(1). Section 163(d)(2) provides that disallowed investment interest for any tax year shall be carried forward and treated as investment *220 interest paid or accrued in the succeeding tax year. We have held that petitioners had $39,902 of disallowed investment interest during 1977, and this amount thus comes forward to 1978. Of the $59,850 claimed by petitioners as interest expense deductions on Schedule A of their 1978 tax return, the $4,000 attributable to Irene Warren and F. Momtoz is not deductible. The $8 of interest paid to the Internal Revenue Service and $3,751 of home mortgage interest is clearly not investment interest. The interest of $1,205 deducted with respect to the rental property was clearly investment interest. Excluding for the moment the $23,286 interest attributable to Zabih, petitioners have failed to establish that the remaining $30,091 of interest claimed on Schedule A of their return was not investment interest. Thus, we must assume for purposes of the limitation imposed under 163(d) that petitioners had already used $31,296 ($30,091 plus $1,205) of the permissible $67,007 of investment interest that could have been deducted in 1978. The remaining amount of $35,711 is more than absorbed by petitioners' payments to Zabih and the interest carried over from 1977, leaving an excess of $27,477 to *221 be treated as disallowed investment interest for 1978. In summary, petitioners' allowable interest deductions in the years before us are as follows: Noninvestment
Investment
Year
Interest
Interest
Total
1977
$3,878
$38,630
$42,508
1978
3,759
67,007
70,766
In accordance with this opinion, Decisions will be entered under Rule 155.
Footnotes
1. On March 5, 1970, Zabih Zohoury transferred $6,000 to petitioners, and a further $10,000 in May 1970. The acknowledgment executed by petitioners in February of 1970 included these funds, since Badi and Zabih Zohoury had agreed that additional funds would be transferred to petitioners at a later date.↩
2. The effective date of the loan is not entirely clear from the record. The written acknowledgment, however, speaks in the past tense, and the record indicates that petitioners considered themselves liable for a full year's interest on $110,000 at the rate of 10% for 1970. We accordingly find the effective date of the loan to be January 1, 1970.↩
3. Petitioners claimed no interest deductions in their 1977 and 1978 income tax returns on account of these payments for Zabih's benefit.↩
4. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
5. See also United States v. Virgin, Jr.,230 F.2d 880, 882↩ (5th Cir. 1956).
6. See Wales v. Commissioner,T.C. Memo. 1978-125, affd. without published opinion (9th Cir. 1980); Zimmerman v. United States,318 F.2d 611 (9th Cir. 1963); Zohoury v. Commissioner,T.C. Memo. 1981-297↩.
7. Among the stipulated exhibits in this record were two handwritten documents purporting to be by Irene Warren and F. Momtoz, respectively, stating the facts of loans by each of them, at stated interest rates, as alleged by petitioners. Respondent objected to the admission of these exhibits as proof of the matters therein stated, on the grounds of hearsay, as part of the stipulation.Respondent's objection was proper, and we have given these documents no evidentiary weight. Fed. R. Evid., Rules 801(c), 802; cf. United States v. Watkins,519 F.2d 294↩ (D.C. Cir. 1975). 8. It is recognized that it would have been difficult to have F. Momtoz, apparently a resident of Iran, testify before this Court. What remains unexplained is why Irene Warren, a resident of the United States, did not testify on petitioners' behalf. Her testimony could have substantially bolstered petitioners' argument on this issue, as well as making admissible the document tendered by petitioners, allegedly authorized by her.↩
9. Our result here does not depend solely on the above rule. Petitioners' testimony supports it, as well as notations on relevant checks, and the fact that petitioners withheld and paid income tax (albeit in what appear to be inadequate amounts) for Zabih with respect to these payments, as being payments of interest.↩ See section 1441.
10. These amounts include $3,600 in 1977 and $1,286 in 1978, paid by petitioners to the Internal Revenue Service for the account of Zabih.↩
11. Section 163(d) states in pertinent part: (d) Limitation on Interest on Investment Indebtedness.-- (1) In general.--In the case of a taxpayer other than a corporation, the amount of investment interest (as defined in paragraph (3)(D)) otherwise allowable as a deduction under this chapter shall be limited, in the following order, to-- (A) $10,000 ($5,000, in the case of a separate return by a married individual), plus (B) the amount of the net investment income (as defined in paragraph (3)(A)), plus the amount (if any) by which the deductions allowable under this section (determined without regard to this subsection) and sections 162, 164(a)(1) or (2), or 212 attributable to property of the taxpayer subject to a net lease exceeds the rental income produced by such property for the taxable year. * * * (2) Carryover of disallowed investment interest.-- The amount of disallowed investment interest for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year. (3) Definitions.-- For purposes of this subsection -- (A) Net investment income.--The term "net investment income" means the excess of investment income over investment expenses. * * * (B) Investment income.-- The term "investment income" means -- (i) the gross income from interest, dividends, rents, and royalties, (ii) the net short-term capital gain attributable to the disposition of property held for investment, and (iii) any amount treated under sections 1245, 1250, and 1254 as ordinary income, but only to the extent such income, gain, and amounts are not derived from the conduct of a trade or business. (C) Investment expenses.-- The term "investment expenses" means the deductions allowable under sections 162, 164(a)(1) or (2), 166, 167, 171, 212, or 611 directly connected with the production of investment income. * * * (D) Investment interest.--The term "investment interest" means interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment. (E) Disallowed investment interest.-- The term "disallowed investment interest" means with respect to any taxable year, the amount not allowable as a deduction solely by reason of the limitation in paragraph (1).↩
12. The above income and expense items, as shown in petitioners' return, were accepted as correct by respondent on audit, and we so accept them here. The same is true for the corresponding items in the 1978 return, discussed infra.↩ Petitioners do not claim that their holding of the office building constituted a trade or business.