CHESTER W. SCHANHOFER and JANET D. SCHANHOFER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schanhofer v. Commissioner
Docket Nos. 4549-84, 26307-84.
United States Tax Court
T.C. Memo 1986-166; 1986 Tax Ct. Memo LEXIS 438; 51 T.C.M. (CCH) 924; T.C.M. (RIA) 86166; April 24, 1986. Richard W. Pitzner, for the petiitoners. Joseph R. Peters, for the respondent. *439 WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: By notice of deficiency dated November 30, 1983, respondent determined deficiencies in petitioners' Federal income taxes for 1979, 1980, 1981 and 1982 in the amounts of $11,037, $7,873, $6,727 and $2,999.99, respectively. The sole issue for decision is whether petitioners are subject to the limitations on interest deductions under section 163(d). [1]
The facts have been stipulated and are so found. The stipulation of facts and the exhibits thereto are incorporated herein by this reference. Petitioners Chester W. and Janet D. Schanhofer are husband and wife who resided in Sparta, Wisconsin, when the petition herein was filed. They timely filed Federal income tax returns for 1979, 1980 and 1981. Chester Schanhofer (hereinafter "petitioner") has been engaged in the sole trade or business of beer wholsesaling as an employee for S & S Distributing, Inc. (hereinafter "S & S") since 1967. S *440 & S is a beer distributorship whose primary franchise is with Anheuser-Busch, Inc. Petitioner started with S & S as a route driver salesman and advanced first to sales manger and then to general manager. In 1976, petitioner became aware that the sole shareholder of S & S, Herbert Severson, wished to sell the business and retire from its operation. Petitioner was concerned that his job as general manager would be jeopardized if the business was purchased by a third party. In order to protect his position, petitioner began negotiations with Severson which resulted in the execution of an agreement between petitioner and Severson on August 20, 1976. Under the terms of the agreement, petitioner agreed to purchase 100 percent of the stock of S & S from Severson for a total purchase price of $950,000. The agreement provided for a down payment of $1,000 on the date of execution, with the balance of the purchase price together with interest thereon at a rate of 4 percent per year to be paid in monthly installments of $5,014.45. An addendum to the agreement executed on February 10, 1977, reduced the purchase price to $778,000 and increased the interest rate to 6 percent per year to be *441 paid in monthly installments of $5,012.37. The agreement was secured by a collateral pledge to Severson of all of petitioner's interest in S & S. An alcoholic beverage permit was issued to S & S by the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms. This permit allows S & S to engage in its wholesale beer activities. It is not transferable and is terminable if petitioner's controlling ownership or management interest is transferred. The two primary assets of S & S are its wholesale franchise agreements with Anheuser-Busch, Inc. and G. Heileman Brewing Co., Inc. These agreements contain provisions which require petitioner to maintain his 100 percent stock interest in S & S as a condition of the wholesale franchises. Any change in the ownership of S & S without the prior written consent of Anheuser-Busch, Inc. and G. Heileman Brewing Co., Inc. is prohibited. Further, the Anheuser-Busch franchise agreement states that it is made in reliance upon the personal efforts and capabilities of petitioner as the "manager" of the franchised operation. The stock purchase agreement between petitioner and Severson prohibits petitioner from transferring ownership of the S *442 & S stock without the prior consent of Severson. Because of the restrictions contained in the alcoholic beverage permit, the franchise agreements with Anheuser-Busch, Inc. and G. Heileman Brewing Co., and the stock purchase agreement, the marketability of petitioner's stock interest in S & S is resticted. Petitioner's primary source of income is the salary he receives from services rendered as an employee of S & S. For each of the years in issue, petitioner's salary income from S & S has exceeded the interest expense in dispute. Petitioner's reason for purchasing 100 percent of the common stock of S & S was to gain control of the ownership and operation of the corporation's beer wholesaling business. Petitioner's primary and predominant business activity since the date of purchase has been the operation and management of the wholesale beer operations of S & S. Petitioner continues to hold his stock in S & S predominantly as a means of engaging in the trade or business of beer wholesaling and not predominantly for the purpose of realizing a gain on its later sale. He incurred the debt which produced the interest deductions in dispute predominantly for the purpose of purchasing *443 and maintaining the business activity of beer wholesaling. On his Federal income tax returns for the years in issue, petitioner claimed deductions for interest paid to Severson under the stock purchase agreement. Respondent, in his notice of deficiency, determined that deductions for the interest paid by petitioner to Severson were subject to the investment interest limitation of section 163(d). Respondent's determinations are presumptively correct; petitioner bears the burden of proof with respect to the claimed deductions. Rule 142(a). Section 163(a) provides "there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." With respect to interest paid on investment indebtedness, however, section 163(d)(1) provides that in the case of a taxpayer other than a corporation, the amount of investment interest which would otherwise be allowable as a deduction is limited to $10,000, plus the amount of net investment income produced by property owned by the taxpayer during the taxable year. If the taxpayer owns 50 percent or more of a corporation or partnership, the limitation is increased by the lesser of $15,000 or the interest paid or *444 accrued during the taxable year on investment indebtedness incurred or continued in connection with the acquisition of the interest in the corporation or partnership. Sec. 163(d)(7)(A). Because the deductions claimed by petitioner for each of the years here in issue exceeded $15,000, respondent, in his notice of deficiency, limited the interest deduction for each year to $25,000 (the sum of the $10,000 specified in section 163(d)(1) plus $15,000 as allowed by section 163(d)(7)). Petitioner contends, however, that the limitations contained in section 163(d) do not apply in the instant case. Under section 163(d)(3)(D), the term investment interest is defined as interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment. Petitioner's position is that he had no investment purpose in purchasing the stock of S & S; rather, he had a predominant business motive for its purchase and, therefore, the limitations on the deductibility of interest paid with respect to the stock under section 163(d) should not apply. Where an asset which is usually held for investment is intrinsically related to the conduct of the taxpayer's trade or business, *445 such asset may constitute property held in connection with the taxpayer's trade or business. . The Corn Products doctrine has been applied in cases where the issue was whether securities were purchased for business rather than investment reasons. , appeal dismissed, , cert. denied , and cases cited therein. The taxpayer in Windle was a wool processor who acquired 72 percent of the stock of a corporation for the predominant purpose of having a captive customer for its processed wool. The taxpayer had a secondary motive of making a profitable investment. After nine unsuccessful years, the captive customer went bankrupt and taxpayer claimed an ordinary loss on its stock. This Court found that the stock was a capital asset in the taxpayer's hands and that the taxpayer's losses therefrom were capital losses. We held "that where a substantial investment motive exists in a predominantly business-motivated acquisition of corporate stock, such stock is *446 a capital asset." . Further, the Court noted that "corporate stock is normally a capital asset, and * * * only where both [the] original purpose of acquisition and the reason for continued retention are both devoid of substantial investment intent should the stock be treated otherwise." . The test articulated in Windle was applied to the restrictions on deductibility of investment interest in . The issue for decision in Miller was whether interest constituted an investment interest expense under section 57(b)(2)(D), relating to items of tax preference subject to the minimum tax imposed by section 56. The definition of investment interest under section 57(b)(2)(D) is the same as the definition of investment interest under section 163(d)(3)(D). The Court noted in Miller that both section 57 and section 163(d) were enacted to prevent taxpayers from taking current deductions for interest expense on investments, the later sale of which would result in a capital gain. . *447 After adopting the substantial investment intent test used in Windle, the Court stated that "[a]pplying a different standard requiring a greater degree of investment intent * * * would frustrate congressional policy." . The Court went on to hold that the investment motive for purchasing the stock in Miller was substantial. The parties in the instant case has stipulated that petitioner's predominant motive in purchasing the stock of S & S was to engage in the trade or business of beer wholesaling and not for the purpose of realizing a capital gain on its later sale. Despite the presence of a predominant business motive, we must also find that there was no substantial investment motive for acquiring or holding the stock if the interest expense is to be deductible in its entirety. ;
Respondent contends that the high price paid by petitioner for the stock in S & S is evidence of his belief that the value of his stock holdings would appreciate. Respondent also states that stock in a major beer distributorship *448 appears to have growth potential and is a marketable commodity. Finally, respondent contends that the S & S stock is not actively used in the trade or business of petitioner, and therefore is a capital asset. The extent to which investment rather than business considerations motivated the purchase of S & S stock is an essentially factual question. (citing . Despite respondent's contentions, on these facts we cannot find that petitioner had a substantial investment motive for acquiring the S & S stock, and is therefore subject to the limitations on the deductibility of interest paid to purchase that stock under section 163(d). Respondent's conclusion that petitioner's investment intent is indicated by the high price paid for the stock is rebutted by the fact that, in an addendum to the original stock purchase agreement, petitioner and Severson reduced the price of the stock by $172,000. This addendum was executed less than 6 months after the original purchase agreement, and, if anything indicates that the value of the S & S stock was not *449 appreciating. Further, respondent's unsupported statement that the stock at issue was a marketable commodity is disproved by the restrictions on alienation of the stock contained in the alcoholic beverage permit, the franchise agreements and the stock purchase agreement. Respondent's claim that stock in a major beer distributor appears to have growth potential is also without foundation. Petitioner owns all of the stock in S & S, and is severely restricted in his ability to trade that stock. It is difficult, if not impossible, to see that such stock has any potential for growth. Finally, respondent's argument that the stock in question was not an asset used in the trade or business of petitioner is irrelevant. Securities purchased by a taxpayer as an integral part of his trade or business may be treated as property other than a capital asset. . The economic reality of the transaction in which petitioner acquired 100 percent of the stock of S & S was the transfer of the corporate assets from Severson to petitioner. The stock purchased by petitioner was an integral and necessary part of his *450 trade or business as an employee of S & S and he had no substantial investment motive for its purchase. Although petitioner acquired ownership of S & S by purchasing 100 percent of its stock, the form of transaction employed by the parties will be disregarded when the objective economic realities are to the contrary. . Therefore, we find that petitioner acquired the S & S stock as a means of protecting his employment, rather than as an investment, and is not subject to the limitations of section 163(d). To reflect concessions of petitioners and the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years here in issue, and all Rules references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩