CHARLES H. KEATING AND MARY ELAINE KEATING, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 41733-84.        Filed November 30, 1987.

---

*James C. Fleming* and *Richard A. Hartnig,* for the petitioners.
*David W. Otto,* for the respondent.

OPINION

SWIFT, *Judge:* In a timely statutory notice of deficiency, respondent determined deficiencies in petitioners' Federal income tax liabilities and additions to tax for 1978, 1979, and 1980, as follows:

| Year | Deficiency | Addition to tax sec. 6653(a) [1] |
|------|-----------|------------------|
| 1978 | $245,706  | $12,285.30 |
| 1979 | 302,293   | 15,114.65 |
| 1980 | 239,449   | - - - |

After concessions, the sole issue for decision herein is whether and to what extent a nonbusiness bad debt is an investment expense for purposes of calculating the limitations on the deductibility of investment interest under section 163(d).

All of the facts have been stipulated, and this case was submitted under Rule 122, Tax Court Rules of Practice and Procedure. The pertinent facts are summarized below.

Petitioners Charles H. Keating and Mary Elaine Keating are husband and wife and resided in Phoenix, Arizona, at the time the petition was filed. Petitioners timely filed joint Federal income tax returns for each of the years in issue. Mr. Keating was a successful business executive. Petitioner and his wife maintained an extensive portfolio of investments including stocks, bonds, and promissory notes.

Among their investments, Mrs. Keating owned the stock of a travel agency named Provident Travel Service, Inc. (Provident Travel). Mr. Keating also had invested in Provident Travel by making cash advances to the company totaling $447,874. The cash advances were evidenced by an unsecured promissory note in favor of Mr. Keating (the advance note) in the principal amount of $447,874, bearing interest at a market rate.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

Provident Travel was not particularly successful. During the time Mrs. Keating owned stock in Provident Travel, no dividends were declared or paid by the company. In 1975, Mrs. Keating sold her stock in Provident Travel to Harrington Enterprises, Inc. (Harrington), an unrelated company, for a total deferred purchase price of $350,000. Harrington executed a recourse promissory note (the purchase note) in favor of Mrs. Keating in the principal amount of $350,000, bearing interest at a market rate. Principal on the purchase note was payable $260,000 on January 15, 1976. The remaining $90,000 was payable in 20 equal monthly installments through January 1, 1979. The purchase note was secured by the stock of Provident Travel.

Petitioners reported on their 1975 Federal income tax return the entire $205,451 gain realized by Mrs. Keating on the sale of her stock in Provident Travel. Following the sale of Mrs. Keating's stock in Provident Travel to Harrington, Mr. Keating continued to hold the advance note reflecting the $447,874 obligation of Provident Travel.

During the years 1975 through 1978, Harrington made some of the payments that were due to Mrs. Keating on the purchase note. Provident Travel did not, however, make any payments to Mr. Keating on the advance note. In 1978, Harrington informed Mrs. Keating that it intended to default on further payments due on the purchase note. Rather than foreclose on the stock of Provident Travel that secured the purchase note, Mr. and Mrs. Keating negotiated with Harrington, and an agreement was reached to restructure petitioners' interests in Provident Travel. Mr. Keating forgave the $447,874 balance due from Provident Travel on the advance note, Mrs. Keating canceled the $296,218 balance due on the purchase note, and Provident Travel assumed a debt that Mr. Keating owed to a bank in the amount of $176,668.

On their 1978 Federal income tax return, petitioners reported a net nonbusiness bad debt in the amount of $567,424. Petitioners calculated the net nonbusiness bad debt as follows:

| | |
|---|---|
| Cancellation of advance note | $447,874 |
| Cancellation of purchase note | 296,218 |
| Less obligation assumed by Harrington | (176,668) |
| Net nonbusiness bad debts | 567,424 |

Respondent does not contest petitioners' characterization of the $567,424 as the net of petitioners' nonbusiness bad debts.

Under section 163(d), the amount of interest that may be deducted with respect to investment debt is limited to the amount of net investment income. The higher a taxpayer's net investment income, the more investment interest the taxpayer is allowed to deduct. "Net investment income" is defined generally as the excess of gross investment income over investment expenses (not including interest).

It is the calculation of petitioners' net investment income that gives rise to the audit adjustments at issue herein. Specifically, in that calculation, petitioners treated the $567,424 in net nonbusiness bad debts as a short-term capital loss which they applied against their $116,800 short-term capital gain for 1978. This offset eliminated short-term capital gain as an item of investment income and reduced net investment income by only $116,800. Respondent, on the other hand, treated the entire $567,424 in net nonbusiness bad debts as an item of investment expense, thereby reducing net investment income by $567,424.

The significant difference in the parties' respective calculations of net investment income is that under petitioners' method, nonbusiness bad debts reduce net investment income only to the extent they offset short-term capital gain. Under respondent's method, however, the total amount of petitioners' net nonbusiness bad debts reduces net investment income. The effect of respondent's calculation of petitioners' net investment income was to reduce otherwise deductible investment interest for 1978 by an additional $450,624 (from $577,131 to $126,507[2]) which resulted in the deficiency at issue.

Section 163(a)[3] generally allows as a deduction "all

---

[2] The total deductible investment interest also was increased by $200 to $126,707, reflecting a $200 audit increase in petitioners' dividend income.

[3] Sec. 163(a) provides as follows:

interest paid or accrued within the taxable year on indebtedness." As explained above, however, section 163(d) limits the deduction of investment interest[4] to net investment income plus certain statutory amounts.[5]

Investment income and investment expenses were defined in section 163(d)(3)(B) and (C), as follows:

(B) INVESTMENT INCOME.—The term "investment income" means—
(i) the gross income from interest, dividends, rents, and royalties,
(ii) the net short-term capital gain attributable to the disposition of property held for investment, and
(iii) any amount treated under sections 1245, 1250, and 1254 as ordinary income,

but only to the extent such income, gain, and amounts are not derived from the conduct of a trade or business.

(C) INVESTMENT EXPENSES.—The term "investment expenses" means the deductions allowable under sections 162, 164(a)(1) or (2), 166, 167, 171, 212, or 611 directly connected with the production of investment income. * * *

Relying on the language of section 163(d)(3)(C), respondent argues primarily that nonbusiness bad debts are expressly included in investment expenses because they are deductions generally allowable under section 166 and they are directly connected with the production of investment income (namely, the interest income accruing on the debts before they were determined to be bad).

---

SEC. 163(a). GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

[4]"Investment interest" was defined in sec. 163(d)(3)(D), as follows:

(D) INVESTMENT INTEREST.—The term "investment interest" means interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment.

[5]Sec. 163(d), as in effect for 1978, provided as follows:

SEC. 163(d). LIMITATION ON INTEREST ON INVESTMENT INDEBTEDNESS.—

(1) IN GENERAL.—In the case of a taxpayer other than a corporation, the amount of investment interest (as defined in paragraph (3)(D)) otherwise allowable as a deduction under this chapter shall be limited, in the following order, to—
(A) $10,000 ($5,000, in the case of a separate return by a married individual), plus
(B) the amount of the net investment income (as defined in paragraph (3)(A)), * * *

For investment interest expenses incurred from all sources after Sept. 10, 1975, taxpayers are allowed a deduction in the amount of $10,000 plus net investment income. For investment interest expenses incurred prior to Sept. 11, 1975, but after Dec. 16, 1969, taxpayers are allowed a deduction in the amount of $25,000 plus net investment income attributable to that time period. Sec. 209(a)(1) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520.

Sec. 511(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2244, amended sec. 163(d) by limiting the deduction of investment interest for any taxable year to only the taxpayer's net investment income. Thus, the $25,000 and $10,000 statutory allowances are no longer available for tax years beginning after Dec. 31, 1986.

Petitioners argue, among other things, that the reference in section 163(d)(3)(C) to "deductions" allowable under section 166 does not refer to nonbusiness bad debts because such debts are treated under section 166(d) as losses from the sale or exchange of capital assets.[6] Respondent counters that to accept petitioners' argument would render meaningless the reference in 163(d)(3)(C) to section 166 bad debts. For the reasons stated below, we conclude that only $116,800 of the total of petitioners' 1978 net nonbusiness bad debts of $567,424 are to be treated as investment expenses in 1978 for purposes of the investment interest limitations of section 163(d).

The investment interest limitations were first enacted by Congress in 1969 in recognition of the fact that absent such limitations, investors could incur substantial interest-bearing debt in making investments the profits from which would be taxable at capital gains rates while the interest accruing on the debts related thereto would be deductible currently and used to offset other, non-investment-related income. The House committee report explained that under then current law it was—

possible for taxpayers to voluntarily incur substantial interest expenses on funds borrowed to acquire or carry investment assets. Where the interest expense exceeds the taxpayer's investment income, it, in effect, is used to insulate other income from taxation. [H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 245.]

The policy considerations underlying the section 163(d) investment interest limitations are relatively clear. More difficult, however, is the application of the specific rules provided therein. What was written in 1978 still is essentially accurate:

It should be noted that to date there are no cases, published rulings or regulations dealing with the subject matter. The only guidance available in attempting to understand the intricacies of Section 163(d) is contained in the legislative history of the three Revenue Acts[3] which have dealt

---

[6]Sec. 166(d) provides as follows:

SEC. 166(d). NONBUSINESS DEBTS.—
  (1) GENERAL RULE.—In the case of a taxpayer other than a corporation—
    (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
    (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.

with investment interest * * * . [Gould, "Investment Interest and its Interrelationship to Other Code Provisions," 36th Ann. N.Y.U. Tax Inst. 1407, 1408 (1978).[7]]

[3]Tax Reform Act of 1969, Pub. L. No. 91-172, secs. 221(a) and 301(a), 83 Stat. 574, 580; Revenue Act of 1971, Pub. L. No. 92-178, sec. 304, 85 Stat. 522-24; Tax Reform Act of 1976, Pub. L. No. 94-455, sec. 209, 90 Stat. 1542-44. * * * [As will be discussed, *infra,* the Tax Reform Act of 1986 also made changes that affected the investment interest limitations of section 163(d).]

The parties maintain that the issue in this case turns on whether nonbusiness bad debts are to be taken into account only in the determination under section 163(d)(3)(B)(ii) of the amount of "net short-term capital gain attributable to the disposition of property held for investment" (as petitioners contend), or whether they are to be taken into account under section 163(d)(3)(C) in the determination of "investment expenses" (as respondent contends). As previously stated, respondent contends that the items in question were "bad debts," not "items attributable to the disposition of property," and bad debts are expressly referred to as items of investment expense under section 163(d)(3)(C). Petitioners argue that the reference in section 163(d)(3)(C) to bad debts is to those bad debts that are "deductible" under section 166, but under section 166(d) nonbusiness bad debts are not deductible but are treated as "a loss from the sale or exchange" of short-term capital assets, which language, petitioners argue, kicks them back into section 163(d)(3)(B)(ii) in calculating the investment interest limitations.

As we understand the relevant statutory provisions, section 163(d)(3)(B)(ii) does not pertain to "bad debts" per se. Rather, it pertains to *actual* capital transactions (i.e., to "net short-term capital gain attributable to [actual] disposition[s] of property held for investment.") It does not pertain to nonbusiness bad debts which, under section 166(d), merely are "considered to be losses from the sale or

---

[7]A number of cases have addressed certain aspects of the investment interest limitations of sec. 163(d), but they do not address the issue raised in this case. See *Miller v. Commissioner,* 70 T.C. 448 (1978); *Zohoury v. Commissioner,* T.C. Memo. 1983-597, 46 T.C.M. 1521, 52 P-H Memo T.C. par. 83,597. See also *Boseker v. Commissioner,* T.C. Memo. 1986-353, 52 T.C.M. 70, 55 P-H Memo T.C. par. 86,353; *Yamamoto v. Commissioner,* T.C. Memo. 1986-316, 51 T.C.M. 1560, 55 P-H Memo. T.C. par. 86,316; *Schanhofer v. Commissioner,* T.C. Memo. 1986-166, 51 T.C.M. 924, 55 P-H Memo T.C. par. 86,166.

exchange of short-term capital assets." If a nonbusiness loan or account receivable is sold or exchanged by a taxpayer in a capital transaction, the loss relating thereto is to be treated as a reduction in the taxpayer's investment income under section 163(d)(3)(B)(ii).

If, however, a worthless nonbusiness loan or account receivable is not sold or exchanged by a taxpayer in a capital transaction, and the related loss is claimed as a "bad debt," the loss is to be treated as an item of investment expense under section 163(d)(3)(C). The reference in section 163(d)(3)(C) to "section 166" is an explicit reference to bad debts. That reference, however, expressly excludes business bad debts (which exclusion is accomplished by use in the first sentence of section 163(d)(3)(C) of the words "directly connected with the production of investment income"). Therefore, the only debts to which the reference in section 163(d)(3)(C) to "section 166" could pertain are nonbusiness bad debts. Up to this point, we agree with respondent's analysis.

There is, however, an important additional limitation in the first sentence of section 163(d)(3)(C) on *the amount* of nonbusiness bad debts (i.e., section 166 expenses) that will be treated as investment expenses for purposes of section 163(d). The additional limitation is provided by the word "allowable." We conclude that this word is intended to limit, among other items, the amount or portion of nonbusiness bad debts that will be treated as investment expenses under section 163(d)(3)(C) to the amount thereof that is allowable as a deduction in the current year. To the extent the treatment of nonbusiness bad debts under section 166(d) limits the deductibility thereof in the current year, the excess is not an "allowable" deductible expense, and therefore is not an investment expense in the current year under section 163(d)(3)(C). If and to the extent nonbusiness bad debts that are not allowed as deductions in the current year become allowable as carryover deductions in later years, they then would become items of investment expense under section 163(d)(3)(C).

Our interpretation of the provisions of section 163(d)(3) is consistent with the objective of the statute (namely, to limit the deduction for investment-related expenses that are

available in the current year to offset non-investment-related income) and it gives substantive meaning to the reference in section 163(d)(3)(C) to "section 166." As explained, if the reference in section 163(d)(3)(C) to "section 166" were held not to refer to any nonbusiness bad debts, such reference would have no purpose.

Our analysis of these provisions also harmonizes the treatment of capital transactions under section 163(d)(3)(B)(ii) with the treatment of nonbusiness bad debts under section 163(d)(3)(C). Under the former provision, a short-term capital loss offsets investment income only to the extent of short-term capital gain (i.e., only to the extent it reduces a taxpayer's ordinary income). Under the latter provision, a nonbusiness bad debt offsets investment income only to the same extent (i.e., to the extent it currently reduces a taxpayer's ordinary income).

Respondent's position, if adopted, would create the anomalous result that if the worthlessness of a nonbusiness bad debt was realized in the context of a capital transaction (which would be governed by section 163(d)(3)(B)(ii)), the nonbusiness bad debt would reduce investment income under section 163(d) only to the extent it reduced ordinary income. A nonbusiness debt, on the other hand, which was worthless—and the loss with respect to which was recognized for tax purposes as a bad debt (which would be governed by section 163(d)(3)(C))—would reduce investment income to the full extent of the bad debt even though the deductibility thereof against the taxpayer's income would be severely limited under section 166(d). We see nothing in the relevant statutory provisions that would support such a significant distinction in the treatment of nonbusiness bad debts depending upon whether the bad debts are realized as part of a capital transaction or are realized as bad debt deductions.

Our holding herein also is supported by the legislative history of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085. H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 153-154. That statute included limitations on the deductibility of certain miscellaneous itemized expenses for taxable years beginning in 1987. See sec. 67(a), I.R.C. 1986. Because the deduction for miscellaneous investment-related expenses

(including nonbusiness bad debts) became subject to the limitations of section 67(a), I.R.C. 1986,[8] the Conference Committee report expressly noted that such nonallowed miscellaneous investment-related expenses will not be treated as investment expenses under section 163(d)(3)(C) even though they would be so treated if they were currently deductible. The report states as follows:

> In determining deductible investment expenses, it is intended that investment expenses be considered as those allowed after application of the rule limiting deductions for miscellaneous expenses to those expenses exceeding 2 percent of adjusted gross income. * * * [H. Rept. 99-841, *supra,* 1986-3 C.B. at 153-154.]

We believe that this statement in the legislative history of the Tax Reform Act of 1986 reflects a rule that has been implicit in those provisions since their original enactment in 1969.[9] We conclude that this rule (namely, that nonbusiness bad debts that are not allowed as deductions in the current year are not to be treated as investment expenses under section 163(d)(3)(C)) also applies to 1978, the year in dispute in this case.

In analyzing the relevant statutory language, we have relied on the following well-recognized principles of statutory construction. Statutory language is to be construed in a manner consistent with the purpose and objective underlying the language in question. *Commissioner v. Engle,* 464 U.S. 206, 217 (1984); *J.C. Penney Co. v. Commissioner,* 37 T.C. 1013, 1017 (1962), affd. 312 F.2d 65 (2d Cir. 1962). A literal interpretation of statutory language is to be avoided where it leads to absurd results, and where a reasonable interpretation is possible, consistent with the statutory language and with the legislative purpose. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575 (1982); *Haggar v.*

---

[8]Sec. 67(a), I.R.C. 1986, provides generally that "miscellaneous itemized deductions for any taxable year shall be allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income."

[9]In support of our analysis of the significance of the above legislative history to the issue before us, is the fact that no material change relevant to the issue before us was made to the language of sec. 163(d) by the Tax Reform Act of 1986. Thus, the fact that deductions not "allowed" or not "allowable" in the current year are not to be treated as investment expenses in the current year apparently already was considered to have been part of the statutory scheme.

*Helvering,* 308 U.S. 389, 391 (1970); *Turner v. Brock,* 813 F.2d 1494, 1499 (9th Cir. 1987).

*Decision will be entered under Rule 155.*